No. 22,820.

C. M. ALBRIGHT, *Appellee,* v. THE BOARD OF COUNTY COMMIS-
SIONERS OF THE COUNTY OF DOUGLAS, *Appellant.*

SYLLABUS BY THE COURT.

1. LIVE STOCK—*Diseased Cattle—Delegation of Official Duties—Who May Inspect Cattle to Ascertain Whether They Are Infected with Tuberculosis.* Either a veterinary inspector from the bureau of animal industry of the United States department of agriculture or a person employed by the state live-stock sanitary commissioner, designated deputy state live-stock sanitary commissioner, may inspect cattle in this state for the purpose of ascertaining whether they are infected with tuberculosis, and on a report from either that the cattle are so infected, the live-stock sanitary commissioner may order that the cattle be destroyed or disposed of under the law for the protection of domestic animals.

2. SAME—*Diseased Cattle—Legal Method of Appraisement.* The owner of cattle infected with tuberculosis, a deputy state live-stock sanitary commisioner, and a member of the board of county commissioners designated by the chairman to act where he is unable to participate, may appraise cattle under section 11084 of the General Statutes of 1915.

3. SAME—*No Evidence of Collusion or Fraud.* There was no evidence to show collusion or fraud in making the appraisement of cattle.

4. SAME—*Diseased Cattle—County to Pay One-half of Appraised Value —Statute Constitutional.* Section 11101 of the General Statutes of 1915, requiring the board of county commissioners to pay one-half of the appraised value of cattle infected with tuberculosis, does not violate any provision of the state or Federal constitution.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed January 8, 1921. Affirmed.

*J. B. Wilson,* county attorney, for the appellant.

*Edward T. Riling,* and *John J. Riling,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to compel the board of county commissioners of Douglas county to pay him $5,125, one-half of the appraised value of cattle condemned and sold under the law for the protection of domestic animals, sections 11067-11104 of the General Statutes of 1915, as amended by chapter 12, Laws of 1917. The plaintiff recovered judgment, and the defendant appeals.

The plaintiff owned a number of pedigreed cattle that became infected with tuberculosis. They were inspected, appraised, and turned over to the state live-stock sanitary commissioner. They were sold by him, and the proceeds from the sale were placed with the county treasurer of Douglas county. The commissioner issued a certificate to the plaintiff and reported to the county commissioners the amount that should be paid him, but the county commissioners refused to pay. This action was then commenced.

1. The first complaint made by the defendant is that "there has been no inspection as required by the statute, and by reason of this fact all the subsequent steps in the matter are void and of no effect." A deputy live-stock sanitary commissioner of Kansas examined the cattle, but the abstracts do not disclose that he inspected the cattle for the purpose of ascertaining whether or not they had tuberculosis. The argument made by the appellant implies that he did make such inspection and did ascertain that the cattle were so infected. The contention is that the inspection must be made by the live-stock sanitary commissioner, and that he does not have authority to appoint a deputy to act in his stead in making such inspection. *Moore v. Wilson,* 84 Kan. 745, 115 Pac. 548, is cited in support of this contention. This court there said that—

"No statutory authority is given the live-stock sanitary commissioner to appoint a deputy, and the duties imposed on him to inquire and de-

termine whether live stock are afflicted with contagious and infectious diseases of a malignant character, and if found to be so afflicted, to establish a quarantine and make such sanitary and police regulations as are necessary to circumscribe and exterminate the disease, involve judgment and discretion and cannot be entrusted to a deputy or delegated to another." (Syl. ¶ 2.)

The court further said that:

"The general rule is that official duties of a ministerial character may be delegated to another but those requiring the exercise of judgment and discretion cannot, unless specific statutory authority to do so is given." (p. 747.)

In *Moore v. Wilson,* supra, a deputy live-stock sanitary commissioner inspected the cattle, ordered a quarantine, and posted a notice thereof. This court held that the deputy could not establish the quarantine, and said:

"The duty of deciding whether stock are affected with any disease, whether it is malignant, contagious or infectious, whether it is such as makes it necessary for the stock to be dipped or otherwise treated, or whether it is necessary to kill and destroy them, involves discretion and judgment which should be exercised with caution and wisdom." (p. 749.)

Moore sought to recover damages from the commissioner and his deputy for willfully and wrongfully quarantining Moore's cattle. To reach a correct conclusion it was not necessary to decide that a deputy commissioner did not have authority to inspect cattle to ascertain whether they were infected with a contagious disease. What was there said concerning that matter was said by way of illustration, and the decision must be restricted to the matter that was then under consideration, the power to establish a quarantine.

In the present case a veterinary inspector from the bureau of animal industry of the United States department of agriculture examined the cattle and ascertained that they were infected with tuberculosis. Section 11077 of the General Statutes of 1915 reads:

"That the live-stock sanitary commissioner be and he is hereby authorized and directed to coöperate with the commissioner of agriculture of the United States, or any officer or authority of the general government, in the suppression and extirpation of any and all contagious diseases among domestic animals and in the enforcement and execution of any and all acts of congress to prevent the importation and exportation of diseased animals and the spread of infectious or contagious diseases among domestic animals."

Under that statute the live-stock sanitary commissioner of this state and the bureau of animal industry of the department of agriculture of the United States government were working together. The government officer informed the state live-stock sanitary commissioner that the cattle had tuberculosis.

The inspection in this case must be upheld on the authority of *Cory v. Graybill,* 96 Kan. 20, 149 Pac. 417, and *Bank v. Cloud County,* 101 Kan. 37, 165 Pac. 870. But it is insisted that these cases are in conflict with *Moore v. Wilson.* Under the rule declared in *Moore v. Wilson* those duties requiring the exercise of judgment and discretion cannot be delegated to another. In *Cory v. Graybill,* the appraisement of cattle that had been ordered destroyed was made by an employee, and the court said, "the appraisement may be made by a deputy employed for the purpose by the live-stock sanitary commissioner" (Syl. ¶ 3), and that the appraisement "may be made by a person employed for the purpose by the state live-stock sanitary commissioner at the expense of the state." (p. 29.) Under *Moore v. Wilson* the deputy is only an employee within the meaning of section 11095 of the General Statutes of 1915, and he cannot legally perform any duty requiring the exercise of judgment and discretion on the part of the commissioner, but he can perform all other duties. The appraisement of cattle, in a limited sense, involves the exercise of judgment in ascertaining their value, but more strictly speaking it requires an exercise of skill and of knowledge. It is not an exercise of judgment for the purpose of determining what is best to do, but is an exercise of skill and knowledge to ascertain a thing that exists. If an appraisement of cattle to ascertain their value can be made by an employee of the live-stock sanitary commissioner, that employee can make an inspection of cattle to ascertain whether they are infected with tuberculosis.

A review of the statutory authority given to the live-stock sanitary commissioner to appoint officers and employ assistants may be profitable. Section 11068 of the General Statutes of 1915, as amended by section 3, chapter 12, Laws of 1917, gives the commissioner authority to "appoint and employ a chief clerk, who shall be a stenographer." Section 11079 in part reads:

"If he [the commissioner] shall require the assistance of technical knowledge, experience, or skill upon any subject connected with his duties

he may command the services of any competent veterinary surgeon or he may call upon the veterinary surgeon of the agricultural college, at Manhattan, Kan., for that purpose."

### Section 11081 provides:

"That whenever the live-stock sanitary commissioner shall determine that certain animals within the state are capable of communicating infectious or contagious disease, he may issue his order to the sheriff or any constable of the county or to any agent, inspector, or authorized representative of the live-stock sanitary commissioner in which such animals are found, commanding him to take into custody and keep such animals subject to such quarantine regulations as the live-stock sanitary commissioner may prescribe, until such time as the said commissioner shall direct such person to deliver such animals to their owner or owners or his or their agent."

### Section 11087 provides:

"That the commissioner shall have power to call upon any sheriff, under-sheriff, deputy sheriff or constable to execute his orders, and such officers shall obey the orders of said commissioner."

### Section 11088 provides:

"That the owner or owners of any stock-yard doing business in this state, when requested by the live-stock sanitary commissioner, shall keep constantly in his or their employ, at his or their expense, a competent inspector of live-stock appointed by said commissioner."

### Section 11094 reads:

"That any person who owns or is in possession of domestic animals which are or which are suspected or reported to be affected with any infectious or contagious disease who shall refuse to allow the authorized officer or officers to examine such animals or shall hinder or obstruct the authorized officer in any examination of or in an attempt to examine such animals shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than one hundred dollars nor more than five hundred dollars."

### Section 11095 in part reads:

"That the state live-stock sanitary commissioner shall have power to employ, at the expense of the state, such persons, and purchase such supplies, appliances, and materials, as may be necessary to carry into full effect all the orders by him given, as hereinbefore provided: *Provided,* That no labor shall be employed nor material or supplies purchased by the live-stock sanitary commissioner except such additional labor, material and supplies as may be necessary to carry into effect the quarantine and other regulations prescribed by the commissioner."

These statutes give unqualified authority to the commissioner to employ persons to help him perform his duties. They

give him authority to employ inspectors—the name by which they are designated or known is immaterial. What are they for? There can be only one answer to this question; that is, to gather information on which the commissioner may act; that information must concern the healthy or diseased condition of cattle. The law does not authorize the commissioner to concern himself with other matters connected with cattle. On either the information given by the government inspector or on the report of the deputy, the commissioner had ample authority to act and order that the cattle be destroyed or otherwise disposed of.

2. Another contention is that the appraisement of the cattle was not made as directed by law. The appraisement was made by the deputy live-stock sanitary commissioner, the owner of the cattle, and a member of the board of county commissioners who acted at the request of the chairman of the board. The chairman was unable to be present. Under *Cory v. Graybill,* and *Bank v. Cloud County,* the deputy had authority to make the appraisement. In *Cory v. Graybill,* this court said that "should the chairman of the board of county commissioners decline to act, as occurred in this case, the appraisement may be made by the live-stock sanitary commissioner, or his deputy, and the owner." (p. 29.) Therefore, where it is necessary to make an appraisement of cattle, and the chairman of the board of county commissioners is unable to assist, another member of the board, at the request of the chairman, together with the deputy and the owner of the cattle may make the appraisement.

3. It is contended "that the evidence clearly shows a collusion on the part of E. C. Cannon, E. N. Underwood and the appellee to defraud Douglas county out of an exorbitant price for the appellee's cattle." Although E. C. Cannon materially influenced the county commissioner in making the appraisement, the trial court in effect found that the evidence was not sufficient to show fraud or collusion, took the case from the consideration of the jury, and rendered judgment for the plaintiff. An examination of the evidence reveals that the finding of the trial court was correct.

4. Another contention is that "the law under which this action is prosecuted is unconstitutional." This contention is based on the argument that the law seeks to deprive the county

of property without due process of law, that it denies to the county the equal protection of the law, and denies to the county the right of trial by jury. The law was passed to protect the general welfare of the state, the health of its inhabitants, and to protect cattle in this state from destruction by contagious diseases. Numerous laws have been upheld having for their objects like purposes. But this does not meet the objection of the defendant. Responding directly to their contention it must be said that the constitutional principles invoked by them protect the citizen, the person, the individual, and the corporation from such legislation, but does not protect the county or the state or any of its agencies therefrom. All these are under the direct control of the legislature, and laws enacted by it bind and control them. We quote from *Mackenzie v. Douglas County*, 81 Ore. 442:

"It may be stated that counties are but agencies of the state for governmental purposes. . . . Where a state by enactment, in furtherance of its governmental purposes, imposes an obligation upon a county not in conflict with the constitution of the state, that obligation becomes one which the county must fairly meet." (p. 444.)

Again, in *Civic Federation v. Salt Lake County*, 22 Utah 6:

"The same power which it [the legislature] may exercise over the revenues of the state it may exercise over the revenues of a county or city for any purpose connected with its present or past conditions, not repugnant to the organic law." (p. 16.)

(See, also, *The State, ex rel., v. Comm'rs of Shawnee Co.*, 28 Kan. 431; *The State v. Freeman*, 61 Kan. 90, 58 Pac. 959; *Gibson v. Sherman County*, 97 Neb. 79, 85; *Lyons v. Freeholders of Morris*, 86 N. J. L. 206; *The People v. The Board of Supervisors*, 43 N. Y. Super. Ct. Rep. [1 Sheldon] 517; 12 C. J. 1005; 15 C. J., 562, 563.)

The judgment is affirmed.