THE CITY OF EMPORIA *et al.*, *Plaintiffs*, V. W. R. GRIF-FITH, *as County Treasurer, etc., et al., Defendants.*

No. 18,067.

SYLLABUS BY THE COURT.

TAXATION—*County Road Fund—By Whom Expended.* The fund derived from a levy on the taxable property of a county for the construction and maintenance of a county road, as provided for in section 33 of chapter 248 of the Laws of 1911, is to be expended by and under the direction of the county commissioners and the approval of the county engineer. The officers of a city within such county are not entitled to the possession of so much of the fund as is derived from the levy on property in the city nor have they any control of the expenditure of the fund.

Original proceeding in mandamus. Opinion filed April 6, 1912. Peremptory writ denied.

*Edwin S. Waterbury,* city attorney, for the plaintiffs.

*O. S. Samuel,* county attorney, for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: The controversy here is whether the county or city authorities shall expend a certain part of the money which resulted from a tax levied against the taxable property of Lyon county for constructing and maintaining a county road. Under authority of chapter 248 of the Laws of 1911 the board of county commissioners levied a one-mill tax upon all the taxable property of the county for county roads. Emporia is a city of the second class, with a property valuation of $10,550,000, and under this levy there has

already been collected on city property alone the sum
of $7300.   The city, proceeding on the theory that
money derived from a levy against city property is city
revenue, demanded the money from the county treas-
urer, who had collected it; but that officer, holding that
the money was county revenue to be expended under
the direction of the county officers, refused the demand.

The provisions of chapter 248 of the Laws of 1911 de-
termine the controversy.   If the money collected is a
county fund to be expended by the county commis-
sioners the demand was properly refused.   That act is
a revision of the road laws of the state and contem-
plates the construction and maintenance of a system of
county roads by the county authorities instead of the
piecemeal plan which formerly obtained and where the
character of the work done on the roads, as well as the
amount expended, was left to the discretion of the local
road officers.   In *The State, ex rel., v. Cowley County,*
ante, p. 201, 119 Pac. 327, it was said:

"An inspection of this statute carries the conviction
that it is a new departure as to the matter of roads and
highways, and changes the old system of county roads
at the expense of the local municipalities to one by
which certain roads, designated by the county board as
state or county roads, are to be maintained at the ex-
pense of the county, a condition which did not exist pre-
viously to the enactment of this statute."   (p. 204.)

The act classifies the roads for which provision is
made as "state roads," "county roads," "mail routes"
and "township roads," and after providing how such
roads shall be laid out and designated, it is enacted that
"all county and state roads shall be maintained at the
expense of the county, and all mail routes and township
roads where they do not coincide with county and state
roads at the expense of the township in which they are
situated."   (Laws 1911, ch. 248, § 18.)   Mail routes
and township roads are under the supervision of the
commissioners of highways, composed of the trustee,

62—86 KAN.

clerk and treasurer of the township, with whom the county engineer is to coöperate, but an entirely different provision is made respecting county roads in section 33 of the act. It declares that:

"The county commissioners of each county may, at the time prescribed by law for levying county taxes, levy a road tax for county and state roads and bridges. of not more than one mill on the dollar on all taxable property in their respective counties and the same shall be collected as are other taxes, and when collected shall be expended upon the building, repair; maintenance and improvement of the state and county roads of such county by and under the direction of the county commissioners and the approval of the county engineer;. provided, that if a majority of the electors voting at an election called for that purpose in such county shall vote to increase the tax levy herein, such board of county commissioners shall levy a tax for road purposes not to. exceed three mills for such road purposes; provided, that the boards of county commissioners shall, within the limit prescribed of one mill on the dollar, keep all state and county roads within their respective counties in first class condition."

It seems reasonably clear that the legislature intended that the making and maintaining of a county road was a county enterprise, and that the fund for that purpose was to be provided by taxing all the property in the county and that no part of the fund derived from that tax was to be delivered to or expended by city or township officers. The language of the act relating to disbursement is clear and mandatory. It would be difficult to choose an expression more positive and obligatory than the one which says that the money shall be expended by and under the direction of the county commissioners and the approval of the county engineer. Counsel for the city claims that section 15 of the act furnishes authority for the expenditure of county road taxes by the city. It provides that cities of the second and third class shall constitute separate road districts, also for the appointment of a street commissioner whose duties are to be performed in the manner and.

under the instructions and limitations which govern township officers, and these provisions are followed by another that "the corporate authorities of any such city are authorized and empowered to use the road tax provided for in this act in paving, macadamizing or grading the streets and alleys in such city," etc. (Laws 1911, ch. 248, § 15.) This general language can not, of course, apply to all the taxes provided for in the act, as provision is made for taxes to which the taxpayers of the city do not contribute anything. It applies rather to taxes levied by the city authorities for the improvement of streets and alleys in cities. A tax is imposed by section 36 of the act which the officers of the city are authorized to expend on the streets of the city. Besides, other statutes provide for levying taxes for the improvement of streets and alleys of cities, and these are placed on the tax roll and collected by the county treasurer, and when collected are of course to be paid over to the city authorities. Provision is also made for the levy of a separate road tax on the residents and property of the township and the fund derived from that source belongs exclusively to the township, and certainly no one would claim that the city authorities could use that tax.

In section 32 it is enacted that all road taxes shall be paid in cash, and that when collected by the county treasurer he shall pay the moneys belonging to the township to the township treasurer and those belonging to the city to the city treasurer, and that each fund so raised shall be used exclusively for the purposes for which it was provided. The fund in question was raised for making and maintaining county roads and can not be diverted to any other purpose. The turning over of this fund to the city and township officers to be expended as they should determine would be a relapse to the old system and a defeat of the obvious purpose of the legislature in providing the new plan of constructing county roads. There is no more reason for

allowing city officers to use a part of the county road fund for city streets than for allowing each township in the county to expend the part collected from it in improving township roads. If that were done there would be no county road fund and no county roads would be built. As to the county road tax, the whole county is the taxing district, and the direction to the county commissioners for the levy of a tax "on all taxable property in their respective counties" (Laws 1911, ch. 248, § 33) does not mean all taxable property outside of the cities of the counties. The power of the board of county commissioners as to county affairs extends over the entire county, and the authority of the board in respect to raising funds for county roads and the building of them is not restricted or affected by city or township boundaries.

The city it seems contributes a large part of this fund, and it is argued that to expend the fund outside the city would be inequitable and unjust. The construction and maintenance of county roads is a purely public purpose in which all the people of the county are interested, and the cities to which these trunk roads lead necessarily share in the general benefit resulting from their construction. When the legislature established state roads and imposed the cost of making them upon the counties through which they were built there was resistance by some of the taxpayers, but it was held that the power could be exercised and that the taxpayers in the cities of the county, however remote from the road, were compelled to pay the taxes levied for that purpose. (*The State, ex rel., v. Comm'rs of Shawnee Co.*, 28 Kan. 431.)·

It is competent for the legislature to give the control of the highways of the county, including the streets of cities, to any of its subordinate agencies. It may exercise the power directly or confer it upon county officers, or it may allow the officers of cities and townships to share in the control. (*La Harpe v. Gas Co.*, 69 Kan. 97,

76 Pac. 448.)   Here it has determined that county roads shall be made under the direction of the county commissioners and the authority to expend the fund provided for that purpose is expressly given to these officers.   It is plain that the phrase in section 15 empowering city officers to use the road tax provided for in the statute does not mean taxes for township roads nor for county or state roads, but manifestly does mean taxes imposed by the city authorities for improving the streets and alleys of the city for which express provision is made by law.

It follows that the peremptory writ asked for must be refused.