C. O. FISHER, *Appellee*, v. DELAWARE TOWNSHIP OF WYANDOTTE COUNTY, *Appellant*.

No. 17,747.

SYLLABUS BY THE COURT.

HIGHWAYS—*Township—Agency of State—Negligence—Personal Injuries.* A township engaged in improving a public highway acts in the capacity of an agency of the state and is not liable to an employee for personal injuries occasioned by the negligence of its officers.

Appeal from Wyandotte court of common pleas. Opinion filed July 6, 1912. Reversed.

*L. W. Keplinger*, and *C. W. Trickett*, both of Kansas City, for the appellant.

*James F. Getty*, of Kansas City, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to recover damages for personal injuries suffered while working upon a public road. The question is whether the township is liable.

The road is one of the public highways which the board of county commissioners of Wyandotte county is authorized to improve and maintain by chapter 276 of the Laws of 1899. In pursuance of section 2 of that

act the township board had proceeded to grade the Kaw valley road. At the time of the accident work was in progress filling up and widening a place in the grade. The appellee was injured in this work while operating a defective scraper. He alleges that he was in the employ of the township and that it is liable because it furnished a defective appliance which caused the injury. The appellant denies that the appellee was in its service and alleges that the work was being done by the county authorities. It also denies liability for any negligence of its officers in any work upon the road.

The evidence shows that in pursuance of an arrangement between the county and township boards the latter undertook to grade the roadbed and completed that work according to stakes set by the county engineer. The county board or the chairman of that board, however, ordered additional work upon the grade. For this purpose the following order was given:

"O. K. Williamson. You are authorized by me as chairman of the Board of County Commissioners to employ teams and men to grade roads and ditch them (along the Kaw Valley road) according to your survey."

Mr. Williamson had previously been engaged in doing similar road work for the township board. Pursuant to the above order he proceeded to work upon the grade, when the township board, finding this work in progress, notified him that the board would not be responsible for the pay, whereupon he said he was doing the work for the county. After this notice no further objection was made and Williamson employed the appellee to work with his team in filling up the grade where he was hurt. The scraper was one of a number that had been borrowed by the township board for the grading it had previously done, and the road overseer consented that Williamson might use it for this particular work.

In doing road work generally in the township it was the custom for the member of the township board

residing in the vicinity of the improvement to employ the necessary labor, supervise the work and report to the board, but no resolution or formal order to that effect had been adopted. The clerk resided at Edwardsville and had personally looked after the grading of this road, but it had been done with the knowledge and by consent of all.

The appellee was injured on January 26, 1910. About a year before that time he had been employed by the clerk of the board and had worked with other laborers in grading this road. Early in January, 1910, he applied to the clerk for further work. The evidence relating to the interviews on this subject is conflicting, but the testimony of the appellee must, in the light of the verdict in his favor, be accepted as true. His testimony in brief was that the clerk said to him, "We are going to fill up that low place out there," that "O. K. (Williamson) was going to be the boss of it." He worked for the township a day or two hauling stone under the orders of the clerk, and then seeing that the additional grading was in progress at the place which the clerk had indicated he applied to Williamson and was immediately set to work and soon afterwards was injured.

The answer contains a verified denial of the allegation that Williamson was the agent of the township. An estoppel is pleaded in the reply based upon the conduct of the township and its officers giving the appellee reason to believe that the work was being done for the township.

The jury found that Williamson was the agent of the township board but that no officer of the township except the clerk ever gave the appellee reason to suppose that Williamson was such agent, and none of them knew of the talk between the appellee and the clerk.

The defense is based principally upon contentions that a township is not liable for injuries sustained

through the negligence of its officers unless such liability is created by statute, and that neither the township nor the township board of highway commissioners employed the appellee or carried on the work in which he was injured.

The first of the above propositions rests upon a distinction declared at an early day by this court between municipal corporations proper, such as cities, and *quasi* corporations, such as counties, townships and school districts.  Concerning the latter it was said:

"True, they are called in the statute bodies corporate. . . . Yet they are denominated in the books, and known to the law, as *quasi corporations,* rather than as corporations proper.  They possess some corporate functions and attributes, but they are primarily political subdivisions, agencies in the administration of civil government, and their corporate functions are granted to enable them more readily to perform their public duties."  (*Beach v. Leahy, Treasurer,* 11 Kan. 23, 29.)

The history and the reason of this distinction are given in the opinion in that case and are elaborately stated in the leading case of *Hill v. Boston,* 122 Mass. 344, freely cited in decisions and textbooks.

In *Eikenberry v. The Township of Bazaar,* 22 Kan. 556, it was declared that while cities are municipal corporations proper, townships are *quasi* corporations and that the difference between them is well established.  Applying this distinction it was held that as there is no express statute imposing a liability upon townships for injuries sustained from defects in highways they are not liable for damages for neglect of duty in failing to keep a public road in safe condition. But it was held in *Jansen v. City of Atchison,* 16 Kan. 358, after a review of earlier cases, that a city was liable in such a case.

In *Comm'rs of Marion Co. v. Riggs,* 24 Kan. 255, the same rule of nonliability was applied in an action against a county although an earnest effort was made

by counsel to induce the court to reconsider its previous ruling. It is a significant fact that the opinion in *House v. The Board of Comm'rs of Montgomery Co.,* 60 Ind. 580, then cited as opposed to the decisions of this court, was afterwards overruled in *Board of Commissioners of Jasper County v. Allman, Admr.,* 142 Ind. 573, 42 N. E. 206, 39 L. R. A. 58, establishing the rule in that state in harmony with the decisions of this state and the weight of authority on this subject. (See, also, *Smith v. The Board of Commissioners of Allen County,* 131 Ind. 116, 30 N. E. 949.)

The principle was again affirmed in an action based upon the negligence of a township in failing to erect watermarks at a ford. (*Township of Quincy v. Sheehan,* 48 Kan. 620, 29 Pac. 1084.) In another action to recover damages for the neglect of a board of education in failing to take a bond from a contractor as required by statute, the court held:

"A *quasi* municipal corporation, like the board of education of a city, is never liable for the consequences of a breach of public duty or the neglect or wrong of its officers unless there is a statute expressly imposing such liability." (*Lumber Co. v. Elliott,* 59 Kan. 42, syl. ¶ 1, 51 Pac. 894.)

The rule of nonliability of counties, townships and school districts for the negligence of their officers having been established, the legislature by chapter 237 of the Laws of 1887 (Gen. Stat. 1909, § 658) declared that counties and townships might be held liable for damages caused by defective bridges and highways in certain cases, but it was said in *Cunningham v. Clay Township,* 69 Kan. 373, 376, 76 Pac. 907, that before the enactment of that statute such an action could not have been maintained, and the limit of the township's liability must therefore be found in the statute itself. Again, in *Shawnee County v. Jacobs,* 79 Kan. 76, 99 Pac. 817, it was held that a county in building a bridge upon a public highway acts as a subdivision of the state government and is not liable for the negligent per-

Fisher v. Township.

formance of the work unless expressly made so by statute.

Judge Dillon states the prevailing rule thus:

"In the United States, *there is no common-law obligation* resting upon *quasi corporations,* such as counties, townships, and New England towns, to repair highways, streets, or bridges within their limits, and they are not obliged to do so unless by force of statute. Even when the legislature enjoins upon corporations of this character the duty to make and repair roads, streets, and bridges, and confers the power to levy taxes therefor, the general tenor of the decisions is to treat this as a *public,* and not a *corporate,* duty, and to regard such corporations, in this respect, as *public or State agencies,* and not liable to be sued civilly for damages caused by the neglect to perform this duty, unless the action be expressly given by statute." (4 Dillon, Muncipal Corporations, 5th ed., § 1688.)

While the soundness of this distinction has been questioned it is too firmly fixed in the jurisprudence of this state, following the weight of authority elsewhere, to be overturned except by legislative action. If the policy had not been approved by the people it is fair to presume that it would have been changed by statute. The fact that it was modified in some respects indicates the legislative purpose to adhere to it in others.

The appellee seeks to distinguish the cases cited and to uphold the liability of the township upon the proposition that it was specially authorized to create the relation of master and servant. The statutes are referred to constituting the trustee, clerk and treasurer a board of highway commissioners to have charge of roads and bridges, imposing upon them the duty to make improvements and repairs and authorizing them to let contracts, appoint overseers, and employ laborers as they may deem expedient. (Gen. Stat. 1909, §§ 9629, 9633, 9634.) Reference is also made to the statute constituting the township a body politic and corporate. It is argued that these provisions devolve ministerial duties upon the board not given by earlier

statutes, from which the liability claimed to exist in this instance arises.

Townships and counties were declared to be bodies politic and corporate by the General Statutes of 1868 (Gen. Stat. 1868, ch. 25, § 1, and ch. 110, § 1), but in *Beach v. Leahy, Treasurer,* 11 Kan. 23, it was held that this fact did not change the principle. By the section last referred to a township was also authorized to make all contracts necessary or convenient for the exercise of its corporate powers. Road overseers were primarily and specially charged with the repair of roads before the act creating the township board of highway commissioners was passed. (*Hari v. Ohio Township,* 62 Kan. 315, 62 Pac. 1010; *Shanks v. Pearson,* 66 Kan. 168, 71 Pac. 252.) It was also their duty to open new roads. (Laws 1874, ch. 108, § 12.) Such improvements necessarily required labor, and provisions existed for levying and collecting taxes and auditing the accounts of overseers for expenditures thereof. It will be noticed that several of the decisions cited were made after the act creating a board of highway commissioners was passed, yet it was not suggested in any of them that its provisions had wrought any change in the liability of townships or counties for negligence of their officers.

The particular statute under which the road in question was improved does not expressly confer authority on the township board to grade the road, but provides that when graded by the township board, road overseer, or by any parties it shall be the duty of the county commissioners to cause it to be macadamized. It is not denied, however, that the board had the power to do the necessary grading under the general provisions of law defining their power and duties. In this situation it is contended that the relation of master and servant was voluntarily created, and that the township is liable for negligence as in ordinary cases where that relation exists. The decisions before referred to are

also differentiated in the argument by the fact that the duties negligently performed in those cases were duties due to the public generally, while here the duty to the appellee to furnish a safe appliance was special and particular. This claim of a distinction as related to actions against counties and townships based upon negligence is not supported by the weight of authority. The broad reason upon which exemption from liability exists is that the township or county, as the case may be, in building roads is acting in the capacity of an agent of the state—the sovereignty—and is no more liable than the state itself would be should it employ some other agency in doing the work. That building and improving highways is a general public or governmental duty has never been doubted. True, cities are held liable for defective streets, and townships are not, but the reason for this difference is not based upon the supposition that a city street is a private affair, and a county or township road is not, for both are general and public. This matter was considered in *Wulf v. Kansas City,* 77 Kan. 358, 94 Pac. 207. The question there related to the control of parks and boulevards, and it was said:

"That public parks are not for the sole use and benefit of the citizens of the city, but are for the enjoyment of the public generally, while ordinarily subject to municipal management, has been frequently held." (373.)

Again, it was said in *Shawnee County v. Jacobs,* 79 Kan. 76, 99 Pac. 817:

"The duty of building bridges and maintaining the public highway has devolved upon the counties and townships of this state since its organization. In the performance of this duty the county acts as an agency of the state, and is no more liable for its acts while so engaged than the state itself would have been if doing the same work." (p. 81.)

The foregoing applies to townships, for both are agencies of the state so far as they are authorized by

the legislature to act in building and improving roads. (Elliott, Roads and Streets, 2d ed., § 9.) It is true that citizens of the locality have a more specific interest in roads of the vicinage because of frequent use, but they have no better right to use them than others.

While a multitude of cases have been brought by travelers who have suffered through defects in highways, actions by laborers for personal injuries caused by such negligence have been less frequent. The same rule, however, is applied:

"A servant's right of action for injuries resulting from any negligence which may be committed by the agents of a municipal corporation while engaged in the performance of one of its public functions is subject to the same limitations as those which circumscribe that right in the case of the state itself. On the other hand, such a corporation is liable as an employer, under the same circumstances as a private individual or corporation, wherever the injury complained of was received by the servant while participating in work which was being done in connection with the exercise of a power conferred upon the corporation for the purpose of enabling it to carry out one or other of its merely ministerial functions." (2 Labatt, Master and Servant, § 847.)

In volume 5 of Thompson's Commentaries on the Law of Negligence, § 5802, it is said:

"Assuming that the nature of the duty in which the corporation is engaged is such that it may be liable at all under the principles already explained, then it seems that it is liable to its servants for negligent injuries visited upon them, under the same principles which govern the liability of other employers to their employees."

"The principle established by the authorities is, that the duty of keeping public ways in repair is one imposed upon all towns and cities alike, as a public duty from the performance of which they derive no special advantage in their corporate capacity; and that the agents selected to execute this duty in obedience to the law of the commonwealth are to be regarded as public officers rather than as the servants or agents of the

municipal corporation by which they are employed. The relation of master and servant does not exist, and the maxim *respondeat superior* does not apply." (*Barney v. City of Lowell,* 98 Mass. 570, 571.)

That action was for injuries to a teamster engaged in hauling rock to repair a highway. The same result was reached in *Hennessey v. New Bedford,* 153 Mass. 260, 26 N. E. 999, in an action by a laborer to recover for injuries suffered by the caving in of a gravel pit from which material was taken to repair streets. The rule was also applied in *Colwell v. Waterbury,* 74 Conn. 568, 51 Atl. 530, where an employee was injured by a defective stone crusher used in preparing material for streets. It was said that the city was clearly performing a governmental function and was not liable. While that case and *Barney v. City of Lowell,* supra, extend the rule of nonliability in such cases to cities, the principle upon which counties and townships are exempted from such liability here is forcibly stated in both— resting upon the fact that they act as governmental agencies and not in a merely proprietary capacity.

In Illinois, in an action against a county for injuries to workmen occasioned by negligence of its officers and agents in erecting a court house, a recovery was denied upon the ground that the county was acting as a governmental agent and so exempt from liability. The court said:

"The authorities, however, do not seem to make a distinction between the negligence of a town or county in failing to observe a duty and the performance of that duty in a negligent manner." (*Hollenback, Admx., v. Winnebago Co.,* 95 Ill. 148, 163, citing *Commissioners of Hamilton County v. Mighels,* 7 Ohio St. 109, a case in which the injury was caused by defective steps in a courthouse.)

In an action in New Hampshire against a town for damages caused by the death of a laborer upon a pub-

lic highway, the court, after stating the dual capacity
of the towns—public and proprietary—said:

"If it (the act of its officers) is a public, govern-
mental duty, in the performance of which the corpora-
tion is clothed with sovereignty, then the officer is not
to be regarded as the agent of the corporation, for
whose negligence it can be held responsible." (*Gates
v. Town of Milan,* [N. H. 1911] 80 Atl. 39, 40.)

It was held that the improvement of highways was a
governmental function and recovery was denied.

In *Hughes v. County of Monroe,* 147 N. Y. 49, 41
N. E. 407, 39 L. R. A. 1, this question was considered
in an action by an employee at a county insane asylum
for personal injuries. The court said:

"It is true, we are not dealing with a municipal cor-
poration, for in February, 1891, the county of Monroe
was a political division of the state, and at most only
a *quasi* corporation; but, nevertheless, the reasoning in
the opinion just cited is applicable." (p. 57.)

It was held that the county, being in the discharge
of public duties and to that extent exercising acts of
sovereignty, was not liable. A note appended to the
report of this case and several other similar cases is
found in 39 L. R. A. 33, 80, reviewing the decisions on
this subject, clasess as exceptional the states of Mary-
land, Pennsylvania, and Iowa. At page 80 of this note,
*Hannon, et al., v. The County of St. Louis, et al.,* 62
Mo. 313, is referred to as a case where "liability was
affirmed on the ground that the injury arose (to an
employee of a county asylum) in discharge of a self-
imposed duty not enjoined by any law, which is a very
fine-drawn distinction." With regard to this supposed
distinction this court has said:

"There is a line of authorities which hold that munic-
ipal corporations are liable for the negligent perform-
ance only of such ministerial public duties as are im-
posed upon them by law, but not for the negligent
performance of assumed duties which are permissive
only. To this doctrine we do not agree. The perform-

ance of public duties which are imperative upon the corporation as well as those which are merely optional, is for the same general purpose—the general welfare of the community." (*Bowden v. Kansas City,* 69 Kan. 587, 593, 77 Pac. 573.)

The Hannon case was also referred to in *Shawnee County v. Jacobs,* 79 Kan. 76, 81, 99 Pac. 817, but was not considered persuasive to fix liability upon the county. Notes in 9 A. & E. Ann. Cas. 1156 and 21 A. & E. Ann. Cas. 1346 refer to a multitude of cases upon this subject. The opinion in *Matsumura v. County of Hawaii,* 19 Hawaii, 18, 21 A. & E. Ann. Cas. 1338, and a dissenting opinion in the same case cite and comment upon many authorities.

The appellee cites *Williams v. Kearny County,* 61 Kan. 708, 60 Pac. 1046, in support of a distinction between duties of counties and townships which are public and general, and such as are special and particular, and deduces the conclusion that the township in this instance owed him a duty of the latter kind. The relation, however, between him and the township was but an incident of the exercise of the broad governmental power relating to highways. Within the authorities and upon principles firmly established in this jurisdiction we can not distinguish between injuries to an employee and to a third person occasioned by negligence of township officers in making highway improvements. The general language of the opinion in the Williams case must be interpreted in the light of the facts then under consideration. The county had entered into a lease and the property had been destroyed. The opinion distinguishes that case from former decisions holding counties exempt from liability for negligence, by the fact that the relation of the parties was contractual. It was said that the county owed to the plaintiff the duty to protect the building from negligent destruction, "not, however, in his mere capacity as a citizen, but because of the contractual relation it had

assumed to him." (p. 711.) That opinion is referred to in a note in volume 3 of Dillion on Municipal Corporations, 5th ed., p. 1593, where it is said that the county was held liable by virtue of its contract and the obligations assumed under its covenants. *Bostwick v. United States,* 94 U. S. 53, 24 L. Ed. 65, referred to in that opinion, originated in the court of claims and the decision was also based upon the covenants expressed and implied in a lease. It was held that a failure to comply with the covenants was a breach of the contract for which the government consented to be sued in the court of claims. A claim for damages not covered by the covenants referred to was held to be not within the jurisdiction of that court. It can not be held that the opinion in the Williams case overrules well-settled principles firmly established by prior decisions and followed without qualification since, upon which counties and townships are held exempt from liability in cases like the one now under consideration.

The opinion of this court in *Bowden v. Kansas City,* 69 Kan. 587, 77 Pac. 573, is cited as upholding the liability of the township, but it should be observed that the liability there declared was against a municipal corporation proper, which as we have seen has been held liable for defective streets from an early period.

Another question fully discussed in the argument is whether the finding that Williamson was authorized to act as agent for the township is supported by any evidence. The solution of this question, and the related question whether the township is estopped from denying that authority, would require very careful consideration, but having reached the conclusion that the township is not liable were the authority sustained, these questions need not be answered.

As the township, as an agency of the state, is not liable, the judgment is reversed and the cause remanded with directions to enter judgment for the defendant.