No. 22,668.

S. D. GRATNEY, as Next Friend of GLADYS GRATNEY, a Minor, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE et al. (Quindaro Township, *Appellant*).

No. 22,142.

S. D. GRATNEY, as Next Friend of GLADYS GRATNEY, a Minor, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Appellee*, et al.

No. 22,143.

S. D. GRATNEY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Appellee*, et al.

SYLLABUS BY THE COURT.

1. DEFECTIVE HIGHWAY—*Personal Injuries—Liability of County for Damages —Township Not Liable.* Under chapter 237 of the Laws of 1887 (Gen. Stat. 1915, § 722), it is held that in view of chapter 276 of the Laws of 1899 and subsequent legislation touching the construction and maintenance of certain roads by Wyandotte county the defendant township is not liable for the injury herein involved.

2. SAME—*Demurrers to Petition Erroneously Sustained.* In view of the legislation mentioned in paragraph 1 it is held that the demurrers to the petition by the defendant county were erroneously sustained.

Appeals from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed January 7, 1922. Reversed.

*C. W. Trickett,* of Kansas City, for appellant Quindaro township.

*J. H. Brady,* of Kansas City, for board of county commissioners; *David F. Carson,* and *James T. Cochran,* both of Kansas City, for S. D. Gratney.

The opinion of the court was delivered by

WEST, J.: An opinion in this case was filed June 11, 1921, but in view of the motion for rehearing it was not officially reported. After considering the motion and again going over the entire matter the court has reached the final conclusion indicated below.

The action was brought in 1916 for injuries occurring in October, 1915, by reason of a defect in a highway in Wyandotte county, known as the Leavenworth road, against the county and township under section 237 of the Laws of 1887, being section 722 of the General Statutes of 1915. The township moved to make the petition more definite by stating whether or not the highway was a county

or township road, which motion was overruled. Then the township demurred to the petition, which demurrer was overruled, and thereafter an answer was filed alleging that the accident was on a county road over which the township had no control or authority. An objection to testimony under the petition was overruled. An instructed verdict was asked for and denied.

The jury were charged that the petition alleged the township had caused and suffered a large hole to be and remain at a point about six hundred feet west of the intersection of the Kansas City Western Railway Company's line and the Leavenworth rock road, and had failed and neglected to erect any barrier or other guards around the same, and had failed and neglected to warn persons traveling upon the road against the defect, which was well known to the trustees of the township, who had actual notice thereof more than five days before the injury; that under the laws of this state any person who shall, without contributing negligence on his part, sustain damages by reason of a defect in a road within a township may recover such damages from such township, when the township trustee shall have had notice of such defective condition for at least five days before the injury. The township objected to this instruction. The plaintiff recovered. A motion for a new trial was overruled, and the township appeals.

Counsel for the township insists that the liability, if any, rests upon the county and calls attention to chapter 276 of the Laws of 1899, entitled:

"An act empowering the county of Wyandotte to improve and maintain certain public highways and to levy and collect taxes for that purpose."

The act authorizes and empowers the board to improve and maintain certain roads, including the one in question, and provides that whenever these highways or any part of them shall have been properly graded and prepared for macadamizing by township boards, road overseers, or by private parties, it shall then become the duty of the board of county commissioners to cause the same, or such parts or sections thereof as shall have been graded and prepared, to be macadamized, and provides that to defray the expense thereof a county tax not exceeding two mills on the dollar shall be levied and the funds derived therefrom set aside and used exclusively for this purpose.

In 1874, the legislature enacted chapter 108, which until after the compilation of 1885 remained a general statute in relation to roads and highways. Beginning with section 16 of that act it appears that an incorporated city of more than six hundred inhabitants should constitute a road district. Section 27 provided that if at any time a highway should be obstructed or become impassable, or any bridge should be impaired so as to make it unsafe—

"It shall be the duty of the overseer of the district in which such obstruction, impassable road or impaired bridge may be situated, to cause such obstruction to be removed, or such road or bridge to be repaired forthwith. . . ."

In the compilation of 1885 this statute was included with chapter 150 of the Laws of 1883, requiring road overseers to remove all cockle burrs and other obnoxious weeds and to prohibit the plowing up of the public highway for the purpose of scouring plows except under the direction of the overseer. No further act of a general nature was passed until 1887, when chapter 214 was enacted providing for the maintenance of county roads by the county commissioners. At this session was also passed chapter 237, the only statute ever enacted by the legislature of this state providing for recovery of damages for defective highways. The legislature of 1901 enacted chapter 296, amending section 12 of the act of 1874, and required each road overseer to open or cause to be opened all state and county roads, "and the overseer shall keep the same in repair, and remove or cause to be removed all obstructions that may be found therein." He was also authorized to enter upon any uncultivated land and use materials, dig ditches necessary for such keeping in repairs, all claims to be allowed and paid by the county board. Chapter 299 authorized the board of Wyandotte county to improve and maintain the Muncie boulevard. Chapter 300 amended chapter 276 of the Laws of 1899, and authorized the board to improve and maintain the Reidy road, the Leavenworth road, the Kaw Valley road and certain other roads named therein, repealing section 1 of the act of 1899. Chapter 301 authorized a certain other road, the act being made supplemental to chapter 276 of the Laws of 1899, and section 2 made it the duty of the county commissioners to expend in the improvement or macadamizing and maintenance such proportion of the two-mill tax levy authorized by chapter 276 of the Laws of 1899, as should be equal to the amount of such levy expended and used by the board for the improvement and maintenance of other

roads·in the county under such act and acts supplemental thereto. Of a similar character were chapter 420 of the Laws of 1903, chapter 421, and chapter 422.

The legislature of 1905 passed a general act in relation to public highways, being chapter 362. This made the township board commissioners of highways of their respective townships:

"And all roads shall be under the direct control of the township commissioners of roads and highways, except incorporated cities of more than six hundred inhabitants. . . ."

Section 4 provided that such commissioners should have entire control and general supervision of all roads and highways in their respective townships, and all tools and implements, and road machinery together with all materials for the construction of culverts and bridges. Chapter 375 was like the act of 1899, as were also chapters 376 and 377. Chapter 378 authorized the grading, curbing and macadamizing of certain other roads to be let on bids and paid for by a tax levied by the board. Chapter 379 gave similar authority with reference to Eighteenth street and required the board to expend therefor the proper proportion of the levy provided for by the act of 1899. Section 5 provided—

"That to defray the cost of macadamizing and maintaining county roads, the board of county commissioners are hereby authorized and empowered to levy and collect annually, on all of the taxable property of said county, a tax not exceeding two mills on the dollar, and the funds provided from such taxation shall be set aside and used exclusively for the improvement of county roads, and for no other purpose."

This appears therefore to have been a general authority and requirement touching macadamizing and maintaining of all county roads in Wyandotte county. Chapter 292 of the Laws of 1907 amended section 1 of chapter 362 of the Laws of 1905, and made members of the township board commissioners of roads and highways of their respective townships, and provided that "all roads shall be under the direct control of the township commissioners of roads and highways, except incorporated cities, . . ." Chapter 294 authorized the commissioners of roads and highways to divide their respective townships, further amending the act of 1905. Chapter 299 amended section 1 of chapter 276 of the Laws of 1899, naming certain roads, not including the Leavenworth road by name. Chapter 300, supplemental to the act of 1899, authorized the board to improve, macadamize and maintain certain other named roads. Like-

wise, chapter 301, the costs to be defrayed by an annual tax not exceeding two mills, and chapter 302, touching Eighteenth street, required the expenditure of the proper proportion of the tax levied by the act of 1899. Substantially similar were chapters 305 to chapter 315, inclusive.

The legislature of 1909 enacted chapter 197, requiring township boards to designate such roads as in their judgment should be known as drag roads, and to divide such roads into sections as would best carry out the purpose and provisions of the act. Also, chapter 198, relating to roads and highways, creating the office of engineer of highways and bridges, amending various provisions of the acts of 1905 and 1907, relating to the commissioners of highways, and the road-drag act of 1907, and repealing chapters 292 and 294, Laws of 1907, touching the duties of township road commissioners. This act required the county engineer to classify the roads of his county, designating them as county, township and local roads, according to their importance and the amount of travel—

"And he shall see that the roads so classified be kept and maintained in condition in proportion to importance and amount of travel. The township highway commission shall classify the roads in their respective townships; . . ."  (§ 2.)

Section 4 amended section 1 of chapter 362 of the Laws of 1905, and provided that the township board—

"Shall be and the same are hereby made commissioners of roads and highways of their respective townships, and all roads outside of incorporated cities shall be under the control of said commissioners of roads and highways, subject to the authority of the county engineer. . . ."

Section 5 provided that all taxes assessed for the purpose of maintaining public roads and highways should be paid in cash and collected as provided for in relation to other taxes, and used exclusively for road purposes.

Section 6:

"The said commissioners of roads and highways shall have control and general supervision of all roads and highways in their respective townships, except that in counties having a county engineer such control shall be subject to the authority of the county engineer, as provided for in this act."

Section 9:

"For the purpose of carrying out the provisions of this act the commissioners of roads and highways shall recommend to the county commissioners of each county in this state, . . . a levy of not more than one mill on the dollar . . . and it shall be the duty of the county clerk to place such levy

on the tax-rolls of said county: *Provided,* That at least seventy-five per cent of all moneys collected from the taxable property in each road district, including cities of the third class, shall be used to improve the roads within such district."

Chapter 201 of the Laws of 1909, providing for the maintenance of country roads, authorized the county commissioners upon a certain petition to cause a country road to be improved as prayed for, such petition to be signed by sixty per cent of the landowners along the line of any regularly laid out road. Section 10 provided that all bridges and culverts costing more than $200 should be built by the county and paid for from the general fund or bridge fund.

The legislature of 1911 enacted chapter 248, another general statute of fifty-six sections, covering the subject of roads and highways, and repealing various former enactments. Section 53 provided that no provision of that act should be construed to repeal or supersede any special act then in force in any county in this state. Chapter 254 authorized the county commissioners of any county having ninety thousand inhabitants or over, where county roads were macadamized out of funds raised by direct tax levy, to grade and macadamize roads leading to public buildings and connecting rock roads already constructed, the cost to be defrayed out of the macadam fund and not to exceed three thousand dollars a year.

Section 3:

"This act shall not be construed as repealing any laws now in existence except in so far as it directly conflicts with the provisions of this act, but it shall be supplementary to said chapter 276 of the Laws of Kansas for the year 1899 and all acts amendatory and supplemental thereto."

Chapter 255 amended section 3 of the act of 1899, and provided that the macadamizing of roads might be done in sections from time to time as there might be funds provided for that purpose, etc. Section 1, chapter 248, defined mail routes as "the free rural delivery mail routes within a municipal township," and township roads, as "all roads within a township other than free rural delivery mail routes," and county roads:

"All roads designated as such by the board of county commissioners of a county connecting cities and market centers, whether both such cities or centers are within the county, or one is within and the other without the county."

Section 18 classified all roads as "state roads," "county roads," "mail routes," and "township roads."

"The 'county roads' shall be all roads designated as such by the board of county commissioners of a county. . : . Free delivery mail routes shall be known as 'mail routes,' and all other public highways within a township are 'township roads.' All county and state roads shall be maintained at the expense of the county, and all mail routes and township roads where they do not coincide with county and state roads at the expense of the township in which they are situated: *Provided,* That all roads designated as county roads under the provisions of chapter 198 of the Session Laws of 1909 and established as such at the time of taking effect of this act shall be and remain county roads and shall be maintained under the provisions of this act."

Section 19:

"All mail routes and township roads shall be under the control of said board of commissioners of highways."

Section 23:

"That the highway commissioner shall have charge of the mail routes, township roads and township bridges of their respective townships, and it shall be their duty to keep the same in repair, and to improve them so far as practicable."

Section 32 provided that the taxes assessed for the purpose of constructing and maintaining public roads should be paid in cash, and the county treasurer should pay that proportion of the same which should be used upon mail routes and township roads or upon city streets to the treasurer of the township or city from which said taxes were collected, to be used exclusively for such road purposes. Section 40 made it the duty of the township trustee to remove all obstructions at least once a year, at such times as the county commissioners might direct, from all public roads and highways in his township.

Section 41:

"That if at any time any highway shall be obstructed or become impassable, or any bridge shall be impaired so as to be unsafe, it shall be the duty of the township trustee of the township in which such obstruction, impassable road or impaired bridge may be situated, to cause such obstruction to be removed or such road or bridge to be repaired forthwith."

In 1913, the legislature enacted chapter 262, supplemental and amendatory to chapter 276 of the Laws of 1899, requiring the county board to expend therefor the proportion of the taxes authorized by the act of 1899.

The legislature of 1915 passed chapter 186, similar to those already mentioned, made the act supplemental to that of 1899; also, chapter 290 amending section 19 of chapter 249 of the act of 1911, making the township board the auditing board for their respective

townships. "All mail routes and township roads shall be under the control of said board of commissioners of highways."

Counties and townships are mere creatures of the legislature. (Constitution, art. 9; Gen. Stat. 1915, ch. 25, art. 2, § 2562, ch. 117, art. 1.) The legislature has the power to abolish counties and county organizations. (*Division of Howard Co.*, 15 Kan. 195.) The legislature has plenary power over roads and highways. It may establish a state road and cast the cost on the county in which the road lies without any vote of the inhabitants. (*The State, ex rel., v. Comm'rs of Shawnee Co.*, 28 Kan. 431.) It was contended in that case that the legislature had no authority to establish a state road and compel Shawnee county to pay for it, but it was said by Brewer, J., that this was done in forty-two instances by chapter 70 of the Laws of 1861. It was also said that it is not like compelling a county to take stock in a railroad corporation; while a road is open to the use of all citizens, it is yet of special value and benefit to the county upon which the burden of its cost is cast.

"It is not like an attempt to tax the citizens of Topeka with the cost of improving the streets of Lawrence. It simply casts upon the counties of Shawnee and Jefferson the cost of roads wholly within their territorial limits, and it is making each county bear the burden of public improvements within such limits. . . . We know of no reason why the legislature might not pass an act declaring all highways state roads, and place the management and control of them in commissions appointed directly by the state; and yet if such an act were passed, the special value and benefit of each road to the community in which it is located would be unchanged." (pp. 433, 434.)

Speaking of counties it was said:

"They are political organizations, whose powers and duties are within the control of the legislature. That body defines the limits of their powers, and prescribes what they must and what they must not do. It may prescribe the amount of taxes which each shall levy, and to what public purpose each shall devote the moneys thus obtained. It may require one county to build a certain number of bridges at certain specified places, and of a particular size and quality. It may require another to open roads in given localities; and another to build a courthouse and to levy a tax to a prescribed amount for the purpose of paying therefor. In short, as a general proposition, all the powers and duties of a county are subject to legislative control; and provided the purpose be a public one, and a special benefit to the county, it may direct the appropriation of the county funds therefor in such manner and to such amount as it shall deem best." (p. 434.)

In *Wulf v. Kansas City*, 77 Kan. 358, 94 Pac. 207, holding that a city may be required by legislative act to establish parks and boulevards and pay the expenses therefor, it was said that—

"Whatever view may be taken of those concerns of cities which are mainly private or proprietary in their nature, in matters in which the state has an interest, and which, as we have seen, are undoubtedly subject to the sovereign control of the state, the state may interfere at will with the local bodies, and may compel the local community to tax itself in order to carry out the obligations imposed upon it by the state." (p. 374.)

*The State v. Lawrence*, 79 Kan. 234, 257, 100 Pac. 485, quoted from the case of *In re Dalton*, 61 Kan. 257, 59 Pac. 336:

" 'Indeed, everything relating to the management of counties, cities and townships not defined and limited by the constitution, may be taken away by the state acting through its legislature, and as to these political divisions and their agents the legislature has the same power that it possesses over state officers.' (p. 264.)" (p. 257.)

Further:

"The state is the sovereign power, and cities, towns and all other municipalities are its subsidiary agencies for governmental purposes. . . . It may well be that the state has the power, if necessity should arise, to require a city to erect a bridge or to construct a road, or to assume a part of the burden of the cost thereof, and that the form of the legislative act would not affect its validity. . . . It is true that streets, roads and bridges are subjects of public interest and of state-wide concern, but more truly speaking .they are local in character." (pp. 257, 258.)

In *City of Emporia v. Griffith*, 86 Kan. 976, 122 Pac. 1053, it was held that a county has the right to tax for the purpose of maintaining county roads under the act of 1911, which is to be expended under the direction of county officers, and that the officers of a city within such county are not entitled to the possession of any portion of the fund and have no control thereof. Near the conclusion of the opinion it was said:

"It is competent for the legislature to give the control of the highways of the county, including the streets of cities, to any of its subordinate agencies. It may exercise the power directly or confer it upon county officers, or it may allow the officers of cities and townships to share in the control." (p. 980. See, also, *Kansas City v. Stewart*, 90 Kan. 846, 136 Pac. 241; *Jefferson County v. Drainage District*, 97 Kan. 302, 155 Pac. 54; *Washburn v. Shawnee County*, 103 Kan. 169, 172 Pac. 997; *Albright v. Douglas County*, 108 Kan. 184, 194 ·Pac. 913.)

The foregoing sufficiently shows that the legislature is not restricted, but in a general way is free to provide much as it sees fit respecting roads and highways. Of course, it can take certain municipalities and roads out from the general category, and can impose damages for defects on whatever *quasi* municipality it deems proper.

Let us examine the act of 1887 and see what the legislative intent evidenced thereby is.

"An act making counties and townships liable for defects in bridges, culverts and highways in certain cases."

Section 1:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert, or highway, may recover such damage from the county or. township wherein such defective bridge, culvert or highway is located, as hereinafter provided; that is to say, such recovery may be from the county when such damage was caused by a defective bridge constructed wholly or partially by such county, and when the chairman of the board of county commissioners of such county shall have had notice of such defects for at least five days prior to the time when such damage was sustained; and in other cases such recovery may be from the township, where the trustee of such township shall have had like notice of such defect."

It must be conceded that the wording is such that interpretation is necessary. It is clear, however, that the subject indicated by the title is the liability of counties and townships for defects in bridges, culverts and highways. It is equally clear that in case of county liability it is required that the chairman of the board must have had five days' notice of the defect, and in case of township liability, the trustee must have had such notice. Also, that the damage is to be recovered from the "county or township wherein such defective bridge, culvert or highway is located." Of course, if either were in a given township it would necessarily be within a county. The ambiguity comes from the language—

"As hereinafter provided; that is to say, such recovery may be from the county when such damage was caused by a defective bridge constructed wholly or partially by such county; . . . and in other cases such recovery may be from the township. . . ."

The court holds that the intent was and the meaning is that in cases in which the township has no duty to keep in repair, or to maintain, no liability was to be attached, whatever the defect. Also, that while the duty under the road legislation rests generally on the township to keep the roads safe and in repair, the Wyandotte county legislation, in 1899 and since, evidences the manifest intent to take this Leavenworth road out from the operation of such general duty and consequent responsibility. The repeated provisions that the county should improve and maintain mean that such improvement and maintenance were thereby removed from the burden of the

township, and that being thus expressly relieved of the duty and burden, the township was by clear implication to be also relieved from liability for defects in a road over which it had no control and in respect to which it owed no duty. It seems unnatural that with the subject thus expressed in the title, and the purpose to permit damages to be recovered by those injured by highway defects, the lawmakers would wittingly have restricted recovery from a county to the single case of a bridge partially or wholly constructed by it. It appears to the court more reasonable and more in accord with the probabilities to construe the act as permitting recovery from the municipality which by subsequent legislation had been given the task of construction, maintenance and control. Otherwise, in this instance, the township, which neither constructed nor maintained the road, must respond in damages for a defect in a road which it was the duty of the county to construct and which it is its duty to maintain. There is something incongruous in the notion that the taxpayers of one township should be required to make an injured traveler whole when the entire county owed him the duty to maintain the highway and by natural, if not imperatively necessary implication, keep it safe for travel.

It is therefore held that the township is not liable, and the judgment is reversed and the cause remanded with directions to enter judgment for the defendant township.

In the companion cases, Nos. 22,142 and 22,143, against the county, demurrers to the petition were sustained. By reason of the foregoing this ruling is reversed, and those cases are remanded for further proceedings.

JOHNSTON, C. J., and Justices PORTER and DAWSON concur in the result.

WEST, J. (dissenting): It is the province of the courts to construe but not to amend statutes. The act of 1887 is to my mind fairly susceptible of only one construction—the one given in the opinion formerly filed in this case.

As early as *Eikenberry v. Township of Bazaar*, 22 Kan. 557, it was held that in the absence of express statutory enactment, placing liability on townships for injuries sustained on account of defects in highways, such organizations are not liable for damages. This was reaffirmed in *Comm'rs of Marion Co. v. Riggs*, 24 Kan. 255, and in *Township of Quincy v. Sheehan*, 48 Kan. 620, 29 Pac. 1084. That

was an action brought under the act of 1887, concerning which it was said:

"Under the statute quoted, the township may be required to respond in damages where the injury results from a defective bridge, culvert, or highway. . . ." (p. 623.)

In *The State, ex rel., v. Shawnee County,* 57 Kan. 267, 45 Pac. 616, the objection urged under the statute was that it withdrew a portion of Topeka from its corporate control. The court said:

"The fact that a county may have built a bridge within the limits of a city does not necessarily imply that the burden of maintaining it is upon the county, nor that the city will be excluded from its control. . . ." (p. 270.)

*Comm'rs of Shawnee Co. v. City of Topeka,* 39 Kan. 197, 18 Pac. 161, was cited to the effect that—

"The mere fact that it may have built the bridge was held to be no reason why the county should be compelled to keep it in repair." (p. 271.)

In *Cunningham. v. Clay Township,* 69 Kan. 373, 76 Pac. 907, it was decided that under the act of 1887 it is not sufficient defense to show that the township officers had exercised ordinary care to prevent the defect.

"Before the enactment of that section in 1887 (Laws 1887, ch. 237), such an action could not have been maintained. . . . The limit of the township's liability therefore must be found in the statute itself, . . ." (p. 376.)

"When injury is sustained by reason of a defective highway, if the township trustee has had five days' notice of the defect the township is liable, however great care the officers may have exercised; but if the trustee has had no such notice the township is not liable, however negligent the officers may have been. The statute makes its own definition of actionable negligence." (p. 377.)

This disposes of the contention that liability is based on mere negligence. *Fisher v. Township,* 87 Kan. 674, 125 Pac. 94, exhaustively reviewed the former decisions of this court touching the liability of townships, and declared the law to be that a township engaged in improving a highway is not liable for damages occasioned by the negligence of its officers. In *Drainage District v. Highway Commissioners,* 102 Kan. 535, 171 Pac. 613, it was held that the statute defining the powers of a drainage district does not vest the board with authority to regulate the construction of highways or of culverts forming parts of the highways within the district.

"But such power over township highways is vested in township officers, . . ." (Syl.)

"Culverts constitute a part of the highway and are necessary to its construction, and the township officers are not only given control of the construction,

but the township itself is made liable for injuries which result from defective construction." (p. 536.)

In *Wagner v. Edwards County*, 103 Kan. 719, 179 Pac. 140, 665, the liability of counties for injuries sustained by reason of defective bridges, culverts and highways was held to be statutory and not coextensive with the common-law liability for negligence. The action involved an alleged defect in a culvert placed in the highway. The case turned on the question of notice, and no reference was made to any distinction between liability of the county or township. *Irvin v. Finney County*, 106 Kan. 171, 186 Pac. 975, held that a county is not liable for defects in a highway unless it has been duly designated as a county highway, nor for defects in bridges unless wholly or partially constructed by it.

"The extent of the liability of counties for such damage and the conditions on which a recovery may be had against them are found in section 722 of the General Statutes of 1915. . . . The section last referred to provides that when a bridge has been wholly or partially constructed by the county, a recovery may be had against the county for damages resulting from defects in it, if due notice of the defects has been brought to the chairman of the board five days prior to the time the damage was sustained." (p. 174.)

*Dubourdieu v. Delaware Township*, 106 Kan. 650, 189 Pac. 386, involved a suit against Delaware township in Wyandotte county for injuries caused by a defective highway a short distance out of Bonner Springs, crossing Wolf creek over which a steel bridge was maintained by Wyandotte county. When the plaintiff reached a point south and west of the bridge a portion of the side of the road caved, causing the accident. The act of 1887 was attacked as unconstitutional, but sustained. It was insisted that under the statute a defective bridge need not be upon a highway at all, but it was said that a bridge is a part of the highway.

"If an accident were caused by a defect in a bridge erected and maintained by a county on a township road, the county under certain conditions would be liable; if the injury were caused by a defect in the part of the road maintained by the township, the township would under similar circumstances be liable. Under the present road laws all public roads are either state roads, county roads, mail routes, or township roads, (Gen. Stat. 1915, § 8772), and certain classes of bridges on a township road are county bridges, because it is made the duty of the county to build them where the cost exceeds a certain amount. . . . As we have seen, it was the legislative purpose to define the liability of townships and counties in certain instances for defects in highways, and each provision of the act is fairly adapted to accomplish the purpose and has a logical connection with the general subject." (p. 654.)

Gratney v. Wyandotte County.

It is quite clear that among all the multitude of road statutes passed in 1874 and since, this is the only one which in any way has ever sought to impose any liability upon a township or county on account of defects in a highway, and this is the first case in the history of the state that has ever presented the clear and square question now raised as to which of the two municipalities is liable. Of course, whatever was said and held by the court in the last two cases cited had reference to statutory enactments since the injury now under consideration occurred and hence was not directly in point.

Counsel cites *City of Eudora v. Miller*, 30 Kan. 494, 2 Pac. 685; *Comm'rs of Shawnee Co. v. City of Topeka*, 39 Kan. 197, 18 Pac. 161; and *City of Rosedale v. Golding*, 55 Kan. 167, 40 Pac. 284, to show that a bridge constructed by a county, and afterwards taken into a city must be maintained by the latter. In the Eudora case it was also held that though the bridge was built by the county and came within the limits of a city of less than six hundred inhabitants, forming a part of two-road districts, the city was still obliged to keep it in repair. In the Topeka case the fact that a city and a county joined in the purchase of a bridge and exercised joint control over it for some time, was held not to impose any liability on the county for the future. The Rosedale case involved a bridge which had been built and maintained by the county within the corporate limits of the city forming a part of one of its streets, and under the general duty of cities to keep their streets reasonably safe for travel the city was held liable.

A supposed poser is put by counsel—that had the county piled rock, gravel and sand along this road, the township would have been helpless to remove such dangerous impediments to travel. We can find, however, no provision of any statute or any fair implication therefrom in anywise authorizing the county thus to endanger travel, or preventing the township from speedily removing such impediments. Indeed, a number of the statutes quoted from carry express commands to the highway commissioners to keep the roads in their townships free from obstructions.

In his brief he says that there is an entry in the journal of the county board recommending that the Leavenworth road be classed as a county road, under date of December 1, 1913. But this decides and determines nothing respecting the liability of the two municipalities under the damage act of 1887.

The strongest argument and the one most vigorously pressed by counsel for the township is that the legislature by the act of 1899 and subsequent supplemental statutes has withdrawn this road from the ordinary category of roads and taken it out from under the obligations and liabilities incident to such ordinary highways within Wyandotte county. Let us see. When chapter 237 was passed, in 1887, the general road law was found in the compiled statutes of 1885, and of necessity the act must be judged and construed as of that date and in view of the legislation then existing.

"The legislature is presumed to have had former statutes before it, to have been acquainted with their judicial construction, and to have passed new statutes on the same subject with reference thereto." (25 R. C. L. 1063.)

An examination of that legislation shows that the road overseer was required to open or cause to be opened—

"all county and state roads and highways which have been or may hereafter be laid out or established through any part of the district assigned to such overseer . . . and the overseer shall keep the same in repair, and remove or cause to be removed all obstructions that may from time to time be found thereon. . . ." (Comp. Laws, 1885, ch. 89, § 12.)

Section 27:

"If at any time any highway shall be obstructed or become impassable, or any bridge shall be impaired so as to be unsafe it shall be the duty of the overseer of the district in which such obstruction, impassable road or impaired bridge may be situated, to cause such obstruction to be removed, or such road or bridge to be repaired forthwith, . . ."

Section 42 provided for declaring a township one road district on proper petition.

"And for the purpose of repairing the roads leading into any city, town or village, any two adjoining townships, or any adjoining city and township, may . . . consolidate . . ."

Section 27 of chapter 16, concerning bridges, required the road overseer to "inspect all the bridges in his district from time to time, and in case any repairs become necessary to any bridge, or approach to a bridge," to repair or report to the county board. That chapter provided that the county board should determine what bridges should be built and repaired at the expense of the county and what by the road district. In case the estimated cost was over $200 they were to appoint the township trustee commissioner to contract for its building. Section 9 provided that when it should become "necessary to repair any public bridge (for which the county has appro-

Gratney v. Wyandotte County.

priated money for the construction thereof)," the county commissioners should require the township trustee of the township in which such bridge was located to examine and estimate the cost of repairing, the county board to appropriate money therefor and "proceed forthwith to cause said bridge to be repaired in the way they may order and direct."

With this existing legislation in view it is proper to examine chapter 237. It will be observed that the damage is to be recovered from the "county or township wherein such defective bridge, culvert or highway is located, as hereinafter provided." Three things—a defective bridge, a defective culvert, or a defective highway—are the only possible causes of injury included. Damages caused by either may be recovered in only one way—that is, "as hereinafter provided." Then come the prescribed way and conditions; when damage was caused by a defective bridge constructed wholly or partially by the county, and the chairman of the county had five days' notice. This is one case. And, "in other cases," which must mean all other cases, "such recovery may be had from the township. . . ." So, according to the unmistakable terms of the act the county is liable in one case only—when the damage was caused (not by a defective culvert or highway, or even by a defective bridge) but by a bridge wholly or partially constructed by the county. Why the act was drawn this way instead of some other, we are not advised nor does it concern us. It is sufficient to know that thus it was written. Nothing whatever in the road law of this state when this statute was passed, and nothing in the act itself, shows the slightest intention to make liability dependent on maintenance, and yet this has been left untouched by the legislature for thirty-four years, and remains the sole legislative instance of making either a township or a county liable for defective bridges, culverts or highways. In view of this history and the plain provisions of the act in question all subsequent acts providing for building and maintaining roads by Wyandotte county can have no effect to repeal or modify this act, which relates not to construction and maintenance of roads or bridges, but only to damages for defects in them.

There will soon be a session of the legislature, and if the interpretation contended for by counsel is desired, a proper amendment can easily be made, or a new act passed.

Justices Burch and Mason join in this dissent.

MARSHALL, J.: I concur in the conclusion that the township is not liable, but I dissent from the conclusion that the county is liable. My reasons for this are as follows: This action was prosecuted under section 722 of the General Statutes of 1915. Under that section no liability is placed on the county for a defective highway. Under section 722 the township had absolute control of the road. That control has been taken away by subsequent legislation. This subsequent legislation by implication has repealed that part of section 722 imposing liability on the township for a defect in the high-way. My judgment is that the legislature may impose liability on the township even if it has no control over the road, but I am of the opinion that, in this instance, subsequent legislation is so inconsistent with the liability of the township under section 722 that the part of that statute imposing liability on the township has been repealed by implication. In other words, my judgment is that there is no liability on the part of either township or county in this action.

---

OPINION ON REHEARING.

(Filed May 6, 1922.)

C. W. Trickett, of Kansas City, for appellant Quindaro township.

J. H. Brady, and T. F. Railsback, both of Kansas City, for the board of county commissioners; David F. Carson, and James T. Cochran, both of Kansas City, for S. D. Gratney.

The opinion of the court was delivered by

WEST, J.: In the former opinion it was held that the township is not liable. A rehearing was granted for the purpose of determining finally whether the county is liable. The question hinges upon the act of 1887 (Gen. Stat. 1915, § 722), and subsequent legislation respecting roads in Wyandotte county.

Considering the title and purpose of the act it is held that the legislative intention was to impose a liability upon counties and townships for defects in roads and bridges, and not to restrict such county liability to defects in bridges constructed wholly by a county. Also that subsequent legislation touching Wyandotte county evinces an intent to place the liability on the county or township whose duty it is to maintain the road or bridge where the defect exists.

The acts, cited in the former opinion, are held to manifest an in-

tention to place, in a case like the one before us, the liability upon the county—its clear duty being to maintain such road.

It is therefore held that the trial court improperly sustained the demurrer of the county, and the cause is remanded for further proceedings in accordance herewith.

WEST, J., dissenting.

MARSHALL, J. (dissenting): This action is prosecuted under section 722 of the General Statutes of 1915. That section reads:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert, or highway, may recover such damage from the county or township wherein such defective bridge, culvert or highway is located, as hereinafter provided; that is to say, such recovery may be from the county when such damage was caused by a defective bridge constructed wholly or partially by such county, and when the chairman of the board of county commissioners of such county shall have had notice of such defects for at least five days prior to the time when such damage was sustained; and in other cases such recovery may be from the township, where the trustee of such township shall have had like notice of such defect."

This statute fixes liability on the county for injuries sustained on a bridge, but does not place liability on the county for injuries sustained on a highway. The accident in this case occurred on a highway; the plaintiff was not injured on a bridge. Therefore, the county is not liable under section 722 for the damages sustained by the plaintiff. So far as the county is concerned, this section of the statute has not been amended or repealed. It is the statute fixing the liability of the county, if there is such a statute. No other statute has been cited fixing liability on the county for defect in a highway. It is safe to say that none exists.

In *Comm'rs of Marion Co. v. Riggs,* 24 Kan. 255, this court in the syllabus said:

"In the absence of a liability expressly declared by statute, a county is not liable for damages accruing from defective highways or public bridges."

That principle has often been followed by this court. (*Township of Quincy v. Sheehan,* 48 Kan. 620, 623, 29 Pac. 1084; *Reading Township v. Telfer,* 57 Kan. 798, 48 Pac. 134; *Silver v. Clay County,* 76 Kan. 228, 230, 91 Pac. 55; *Shawnee County v. Jacobs,* 79 Kan. 76, 99 Pac. 813; *Fisher v. Township,* 87 Kan. 674, 125 Pac. 94; *Thomas v. Ellis County,* 91 Kan. 443, 138 Pac. 409; *Harper v. City of Topeka,* 92 Kan. 11, 14, 139 Pac. 1018; *Gray v. Sedgwick County,* 101 Kan. 195, 198, 165 Pac. 867.)

Gratney v. Wyandotte County.

In *Silver v. Clay County*, 76 Kan. 228, 230, 91 Pac. 55, this court said:

"We have not been cited to any statute, and believe none exists, which imposes any obligation upon a county to respond in damages for the negligence or even wrongful act of its officers in relation to the maintenance of public roads or bridges, except section 479 of the General Statutes of 1901." (Section 479 of the General Statutes of 1901 is section 722 of the General Statutes of 1915.)

Taking liability away from the township does not fix the liability on the county. That method of establishing liability would be in violation of section 16 of article 2 of the constitution of this state. In my judgment, the county is not liable.

BURCH, J., joins in this dissent.

DAWSON, J. (concurring specially): This action is brought under a statute, the avowed purpose of which is expressed in its title:

"An act making counties and townships liable for defects in bridges, culverts and highways in certain cases." (Laws 1887, ch. 237, Gen. Stat. 1915, § 722.)

In the text of the statute it is similarly declared—

"Section 1. Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert, or highway, may recover such damage from the county or township wherein such defective bridge, culvert or highway is located, as hereinafter provided; that is to say, such recovery may be from the county when such damage was caused by a defective bridge constructed wholly or partially by such county, . . . and in other cases such recovery may be from the township, . . ."

It is my opinion that the words "culverts and highways" as first used in the text of the statute are merely omitted in repeating the declaration of the county's liability through a careless elision and not through any intention that counties shall be relieved of liability for defective culverts or highways. Note that in the concluding language of the act, where the liability of townships is prescribed, all three of the words, "bridges, culverts and highways," *in haec verba* are omitted, but without in the least destroying the avowed legislative intention as declared in the title and in the earlier part of the text.

It seems to me that the familiar and often invoked rule of statutory construction is pertinent here:

"It is familiar law that legislative enactments are not any more than any other documents to be defeated on account of errors, mistakes or omissions. Where one word or figure has been erroneously used for another or a word

Sims v. Construction Co.

omitted, and the context affords the means of correction, the proper word or figure will be deemed substituted or supplied. This is only making the naked letter of the statute yield to its obvious intent. (*Brook v. Blue Mound,* 61 Kan. 184, 59 Pac. 273; *Reese v. Hammond,* 94 Kan. 459, 146 Pac. 997; Sutherland on Statutory Construction, § 260.)" (*Coney v. City of Topeka,* 96 Kan. 46, 49, 146 Pac. 689.)

(*Tatlow v. Bacon,* 101 Kan. 26, 31, 165 Pac. 835; *The State, ex rel., v. City of Hutchinson,* 106 Kan. 532, 534, 188 Pac. 433.)

Certainly if the county liability is limited to recovery of damages sustained by defective county bridges, the text of the statute, "such recovery," etc., would compel a similar limitation on the liability of the township to defective township bridges. This would grossly distort the declared legislative intention.

The construction I suggest has one virtue—that of making the naked letter of the statute yield to the declared purpose of the legislature in enacting it. Thus construed, the county is liable where with adequate notice it has neglected its duty touching county bridges, culverts and highways; and the township is liable for its similar neglect of duty touching township bridges, culverts and highways.

JOHNSTON, C. J., and PORTER, J., join in this special concurrence.

MASON, J. (concurring specially): To me the statute seems to say that the township is liable, but in view of the rejection of that interpretation I think it may and should, by a liberal construction, be held to impose liability on the county.