JAMES B. MOORE, *Appellant*, V. CHARLES W. WILSON *et al.*, *Appellees.*

No. 17,050.

SYLLABUS BY THE COURT.

1. OFFICERS—*Delegation of Official Duties.* Ordinarily, official duties of a ministerial character may be delegated to another, but those involving the exercise of judgment and discretion may not be entrusted to a deputy, or other person, unless legislative authority to do so is given.

2. ———— *State Live Stock Commissioner—Deputy.* No statutory authority is given the live-stock sanitary commissioner to appoint a deputy, and the duties imposed on him to inquire and determine whether live stock are afflicted with contagious and infectious diseases of a malignant character, and if found to be so afflicted, to establish a quarantine and make such sanitary and police regulations as are necessary to circumscribe and exterminate the disease, involve judgment and discretion and can not be entrusted to a deputy or delegated to another.

Appeal from Sherman district court. Opinion filed May 6, 1911. Reversed.

*George H. Whitcomb,* and *Clad Hamilton,* for the appellant.

*John S. Dawson,* attorney-general, *S. N. Hawkes,* assistant attorney-general, *Charles D. Shukers,* special assistant attorney-general and *E. F. Murphy,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The principal and controlling question in this case is whether the live-stock commissioner has authority to appoint a deputy to act for him. James B. Moore, a farmer of Sherman county, who owned ninety head of cattle, was called on by Charles W. Wilson, who assumed to act as a deputy of John B. Baker, state live-stock commissioner, and with little if any inspection decided, on August 11,

1908, that the cattle were infected with mange and placed a quarantine upon them. He posted a quarantine notice on the premises which recited that an order had been made forbidding the removal of the cattle from the premises, or of permitting other cattle to enter upon the premises, and it was signed "J. B. Baker, Kansas State Live-stock Sanitary Commissioner, by C. W. Wilson, Deputy." Moore insisted that his cattle were not infected with disease, but Wilson demanded that they should be dipped and caused the sheriff to start with the cattle to a dipping vat, but before they were dipped Moore obtained an order enjoining the dipping of the cattle until an inspection could be made by the commissioner to determine whether the cattle were infected, which order was to remain in force for thirty days. The cattle were returned to the premises where the quarantine was declared. Correspondence was had with the commissioner, who sent an inspector, named McIntosh, to examine the cattle who, it appears, found no disease, but he declined to reverse the action of Wilson or to discharge the quarantine. A hearing of a motion to continue the restraining order was had on September 16, 1908, and after evidence had been introduced McIntosh, who appeared and acted for the state and the officers, confessed judgment for costs and released the cattle from the quarantine. Moore then brought this action against the commissioner and Wilson to recover damages for willfully and wrongfully quarantining his cattle, alleging that there was no ground for the order of quarantine; that it was done to oppress and injure him; and that their action caused injury and loss which, with attorney's fees, amounted to $1600. At the trial, which resulted in a verdict for defendants, the court instructed the jury to the effect that, although there was no statute authorizing the commissioner to appoint Wilson as his deputy, the character of the office and the duties pertaining to it

were such as warranted him in appointing a deputy with power to do all things which the commissioner himself could do and that whatever the deputy did in the performance of his duty, as such, became the act of the commissioner for which the latter was responsible.

The contention is that the duties devolving on the commissioner involved the exercise of judgment and discretion and that, in the absence of statutory authority, no deputy could be appointed to act in his stead.  The statute does empower the commissioner to appoint a clerk, a stenographer, inspectors for stock-yards, to employ laborers to assist him when necessary and to call on sheriffs and constables to execute is orders, but it is conceded that there is no statute empowering him to appoint a deputy.  The general rule is that official duties of a ministerial character may be delegated to another but those requiring the exercise of judgment and discretion can not, unless specific statutory authority to do so is given. Likewise, officers chosen because of their experience or special fitness and capacity are not permitted to delegate or entrust such duties to deputies or other persons.  The same rule has been applied to arbitrators, executors, guardians and public trustees, in whom personal trust is confided, or who were chosen because of certain qualifications.   (Mechem, Agency, §§ 188, 190.)   At common law, officers could appoint deputies for the discharge of mere ministerial duties but they had no authority to entrust to deputies the performance of duties of a judicial nature or those involving judgment and discretion.  In a general way it may be said that the presumption of the law is that an office is to be held and executed by the one chosen for it and, especially where it is necessary that the officer shall possess particular qualifications.   In section 567 of Mechem's Public Offices and Officers it is said:

"In those cases in which the proper execution of the office requires, on the part of the officer, the exercise

of judgment or discretion, the presumption is that he was chosen because he was deemed fit and competent to exercise that judgment and discretion, and, unless power to substitute another in his place has been given to him, he can not delegate his duties to another."

In *Prell v. McDonald*, 7 Kan. 426, it was held that a marshal of a city of the second class could not appoint a deputy to act for him in the absence of a statute or an ordinance authorzing it. In *State v. Hastings*, 10 Wis. 525, it was held that certain duties imposed on the secretary of state could not be delegated to a deputy or an assistant. It was also held that a board of health could not delegate to others statutory power and discretion specially vested in the board. (*Young v. The County of Blackhawk*, 66 Iowa, 460.) In New York it has been held that a board of excise, whose duties involved confidence and a trust to be exercised for the public good, could not delegate its authority to another. (*Board of Excise v. Sackrider*, 35 N. Y. 154.) In *Powell v. Tuttle*, 3 N. Y. 396, it was held that if the duties are partly ministerial and partly of a judicial nature, the former may be committed to a deputy, but that the latter could not be delegated. In *State ex rel. v. Reber*, 226 Mo. 229, where the duties of an officer, in a tax transaction, included some which involved discretion and, following the performance of the duties involving the exercise of the discretionary power, others of a ministerial character were to be performed, the court held that the officer, having personally performed those involving discretion, might authorize other persons to perform the remaining ones. In the opinion it was said:

"An officer to whom a discretion is intrusted by law can not delegate to another the exercise of that discretion, but after he has himself exercised the discretion he may, under proper conditions, delegate to another the performance of a ministerial act [such

as signing instruments] to evidence the result of his own exercise of the discretion." (p. 237.)

(See, also, *Coffee v. Tucker*, 26 Tenn. 49; *Holley v. County of Orange*, 106 Cal. 420; *Robinson v. Chapline*, 9 Iowa, 91; *People ex rel. Board of Charities v. Davis*, 22 N. Y. Supr. Ct. 209; Mechem, Agency, § 190; 1 A. & E. Encycl. of L. 975; 29 Cyc. 1395.)

Under the statute a commissioner is required to have special qualifications; that is, he can not be appointed unless he has been "extensively engaged in the breeding and handling of cattle for a period of not less than ten years immediately preceding his appointment to such office." (Laws 1905, ch. 495, § 1, Gen. Stat. 1909, § 9132.) The law vests him with the authority to inquire and determine whether stock are affected with contagious or infectious diseases of a malignant character, and upon determining that stock are so affected, he may establish a quarantine and make such sanitary and police regulations as, in his judgment, are necessary to circumscribe and exterminate the disease. The duty of deciding whether stock are affected with any disease, whether it is malignant, contagious or infectious, whether it is such as makes it necessary for the stock to be dipped or otherwise treated, or whether it is necessary to kill and destroy them, involves discretion and judgment which should be exercised with caution and wisdom. He may not only take cattle from the custody of the owners and hold them at the owner's expense, but he is vested with the discretion to determine that a necessity exists to destroy the animals, and to appraise their value in case they are killed. In *Asbell v. Edwards*, 63 Kan. 610, where the exercise of this power was considered, it was said that "the duty of determining, by investigation of the facts, whether a man's property shall be seized and withheld from him is essentially judicial." (p. 616.) The fact that certain qualifications must exist in a commissioner,

that the establishing of a quarantine is expressly imposed on the commissioner himself, that no provision is made in the statute for the appointment of a deputy, and that the functions and duties of a commissioner involve discretion and judgment, make it clear that he has no authority to appoint a deputy.

The argument that it is impracticable for a commissioner to give personal attention to every case can not control. Besides, the legislature seems to have provided for such a contingency by enacting that, on information that such diseases exist, the sheriff may make an examination and report the results to the commissioner and may prescribe a temporary quarantine until the commissioner can personally investigate and can make such orders and regulations as the case may require. The contention that the quarantine established by Wilson was immaterial, and that practically the only restraint ever imposed on appellant's cattle was that exercised by the sheriff, can not be sustained. It was Wilson who declared and established the quarantine and he did it as a deputy of the commissioner. The commissioner undertook to commission him as a deputy and Wilson testified that he acted as a deputy, and, besides, the quarantine notice which he posted was signed "J. B. Baker, Kansas State Live-stock Sanitary Commissioner, by C. W. Wilson, Deputy." It was on Wilson's order that the sheriff took charge of the cattle, and while it is true that the sheriff had custody of the cattle for only a short time the temporary order which prevented him from dipping them did not release the stock from restraint. The communications between appellant and the commissioner, and those acting for him, recognized that the cattle were still under quarantine and remained so until the hearing was had on the injunction, when a formal declaration of release was made, that, however, being more than five weeks after the quarantine was established. It may be that the illegal quaran-

tine was not strictly enforced, and that little damage resulted from the restraint of the cattle, but that is something to be determined in a future trial when the jury are properly instructed that Wilson was not a deputy of the commissioner and had no authority, as such, to establish a quarantine or to restrain appellant's stock.

The judgment is reversed and the cause is remanded for a new trial.