No. 19,088.

JAMES B. MOORE, *Appellant*, v. CHARLES W. WILSON and JOHN B. BAKER, as State Live Stock Sanitary Commissioner, etc., *Appellees*.

### SYLLABUS BY THE COURT.

1. LIVE STOCK—*Wrongfully Quarantined—Damages—Erroneous Instructions When Not Prejudicial.* Erroneous instructions in a damage action, with respect to the rightfulness of the defendants' conduct, can not be prejudicial to the plaintiff where the jury find that the acts complained of were wrong-' ful, but occasioned him no injury.

2. SAME—*Setting Aside Verdict — Attorney's Fees — Punitive Damages—Instructions.* Upon the setting aside of that part of a verdict which allows the plaintiff to recover his attorneys' fees in the action, he is not entitled to a new trial on the ground that the jury would have allowed him punitive damages if they had not been erroneously instructed that he could recover his attorneys' fees, where he invited the error by asking both punitive damages and his attorneys' fees.

3. SAME—*Refusal to Submit Certain Special Question—No New Trial Required.* The refusal of the court to submit to the jury the question of the liability of one of two defendants (whose offense, if any, was of a less degree) for punitive damages, will not ordinarily be a sufficient ground for granting a new trial, where the jury, although having the opportunity, find no punitive damages against the other defendant.

Appeal from Sherman district court; WILLIAM S. LANGMADE, judge *pro tem.* Opinion filed June 12, 1915. Affirmed.

*Clad Hamilton*, and *Clay Hamilton*, both of Topeka, for the appellant; *John Hartzler*, and *C. C. Perdieu*, both of Goodland, of counsel.

*S. M. Brewster*, attorney-general, and *S. N. Hawkes*, assistant attorney-general, for the appellees.

The opinion of the court was delivered by

MASON, J.: In 1907 the governor of Kansas issued a proclamation, upon the notification of the state live stock sanitary commissioner, and in accordance with

the statute (Gen. Stat. 1909, § 9140), establishing a cattle quarantine in a number of counties, including Sherman. Among other matters it provided that cattle within the prescribed territory should not be moved without inspection, and the issuance of a certificate of the commissioner, his agent or inspector, declaring them free from mange; that the owner of cattle afflicted with mange should upon notice from the live stock sanitary commissioner, his agent or inspector, dip them, or give them such other treatment as the commissioner might require; and that in case of the failure of the owner to do so, the sheriff might take possession of them and treat them until cured. On August 11, 1908, Charles W. Wilson, assuming to act as a deputy live stock commissioner, visited the ranch of James B. Moore in that county, examined his cattle, decided that they were infected with mange, and ordered them to be dipped. Moore refused to comply with the order. Wilson then posted a notice on Moore's granary, stating that the mange existed among his cattle, and forbidding any cattle to be removed from the premises. Two days later the sheriff, by direction of Wilson, took Moore's cattle and started to drive them to a dipping vat. Moore began an injunction suit, obtained from the probate court a restraining order against the further proceedings of the sheriff, and repossessed himself of the cattle. Moore complained to John B. Baker, the state live stock sanitary commissioner, who at first sent an agent, John C. McIntosh, to look into the matter, and later sent a veterinarian to examine the cattle. The veterinarian examined them September 3, 1908, and pronounced them free of mange. The restraining order had been kept in force until September 16, 1908, when a hearing was had on a motion to continue it, and an order was made by the probate court, concluding thus: "Thereupon the defendant, Charles Wilson, by J. C.

McIntosh, on behalf of the state of Kansas, confesses judgment for all the costs in the court and accruing costs, and thereupon released the plaintiff's cattle from quarantine and gave the said cattle of plaintiff a clear bill of health and said motion was dismissed."

On October 9, 1908, Moore brought an action against Wilson and Baker, on account of their conduct in regard to his cattle, in which he placed his damages at $500. By an amendment made in February, 1909, he increased his estimate to $1600, itemized as follows: Attorneys' fees, $300; slander of herd, $500; extra care to herd, $100; loss of cattle and depreciation, $400; punitive damages, $300. A trial resulted in a verdict and judgment for the defendants, which was reversed on appeal, this court holding, contrary to the view of the trial court, that Wilson was not a deputy live stock commissioner, because the statute made no provision for such a deputyship. (*Moore v. Wilson,* 84 Kan. 745, 115 Pac. 548.) Later the plaintiff amended his petition, increasing his claim to $17,020. At a second trial a verdict was returned in his favor for $610, the jury finding that he was entitled to recover $20 for attorneys' fees in the injunction suit, and $590 for attorneys' fees in the present litigation. The court gave judgment for $20, and the plaintiff appeals.

One of the specific charges made against Baker in the petition was that he refused to give the plaintiff a certificate of health for the cattle, as he was required by law to do. The plaintiff complains of an instruction to the effect that no damages could be recovered on account of a refusal to give such a certificate, unless it had been demanded. This seems entirely reasonable, but the question need not be determined, for a reason which will be presently stated. Complaint is also made that the instructions were misleading because they stated at considerable length the powers of the live stock commissioner to do certain things in a certain way, when there was no evidence whatever that the

procedure thus outlined had been followed. The question whether error was committed in giving these instructions need not be considered, for this reason: The jury found that the conduct of both the defendants was wrongful throughout, and therefore it is obvious that no prejudice resulted from a failure of the trial court correctly to define their duties. A specific finding was made that the attempted quarantine of the plaintiff's cattle by the defendants was made maliciously and without reasonable cause. The jury were told that the plaintiff might recover his attorneys' fees in the case on trial if they found that any refusal to issue a certificate of health for his stock was willful and malicious and unjustifiable. The jury allowed these attorneys' fees against both defendants, and thereby necessarily found that they had been guilty of such a refusal. But they also determined, by special findings as well as by general verdict, that the plaintiff suffered no substantial injury in the matter beyond his expenditures for attorneys' fees. This question of the amount of the plaintiff's loss could not have been affected by any error in the instructions as to what constituted wrongful conduct on the part of the defendants. The finding of the jury that prior to the commencement of this action the plaintiff had suffered no actual loss by reason of the wrongful conduct of the defendants beyond the expenditure of $20 for the services of an attorney in the injunction suit, not being affected by any of the instructions complained of, is conclusive upon that feature of the case.

The part of the verdict which was based upon the liability incurred by the plaintiff for attorneys' fees in this litigation was rightly eliminated. (*Evans v. Insurance Co.*, 87 Kan. 641, 125 Pac. 86.) The plaintiff contends that the jury would have allowed punitive damages if they had known that they could not allow attorneys' fees. This may be true. But we can not reverse the judgment at the instance of the plaintiff

because of an erroneous instruction in his favor which he had invited by asking a recovery of his attorneys' fees in addition to punitive damages.

Complaint is made of an instruction that punitive damages could not be recovered against Baker. Under the evidence there was perhaps room to submit this question to the jury. But if error was committed in this regard it was manifestly nonprejudicial. The jury allowed no punitive damages against Wilson, although they had full opportunity to do so. And their finding that the circumstances did not call for an assessment of such damages against him necessarily implied that none were warranted against Baker, the gravamen of the charge against whom was that he gave countenance to the wrongful conduct of Wilson. Moreover, the trial judge would evidently not have affirmed a verdict charging Baker with punitive damages, and without his approval it could not have stood. Nor can we think that justice could be subserved by remanding the cause for trial upon the issue of Baker's liability for punitive damages.

The plaintiff contends that the special findings are inconsistent with each other. One instance is this: the jury found that Wilson told prospective buyers of the cattle in November that he would not allow them to be shipped if sold, and also returned a negative answer to the question, "Was plaintiff compelled to keep his herd of cattle over winter because of the wrongful acts of defendants?" Wilson's threat tended to discourage buyers, but it would not unavoidably prevent a sale, and no necessary inconsistency in these answers is apparent. The jury were also asked, if they answered the question just quoted in the affirmative, to state whether such wrongful acts were malicious and oppressive. They answered in the negative. No answer was required by the form of the question, and the jury seemingly meant merely to repeat their negation of the theory that the plaintiff had been compelled to

41—95 Kan.

keep his cattle all the winter. The wrongful acts found to have been committed by the defendants had a natural tendency to injure the plaintiff, but whether they actually had that effect was for the jury to decide.

The judgment is affirmed.

DAWSON, J., not sitting.