Jerry Lonergan, President Kansas, Inc. 632 S.W. Van Buren, Suite 100 Topeka, Kansas 66603
Dear Mr. Lonergan:
As president of Kansas, Inc. you inquire regarding the ability of members of the board of directors of Kansas, Inc. to delegate to a subordinate the member's authority to discuss and vote on issues that come before the board. You also inquire whether absent board members may designate other board members as proxies and the number of board members necessary to constitute a quorum.
Kansas, Inc. is a statutorily created public instrumentality, the overall purpose of which is to foment economic development for the State.[1] Its governing body is composed of seventeen members who include: (1) the Governor; (2) the Secretary of Commerce; (3) nine individuals who are appointed by the Governor and confirmed by the Kansas Senate; (4) the commanding general of the Kansas Cavalry; (5) a member selected by the Kansas Board of Regents; and (6) the Speaker of the House, the House Minority Leader, the President of the Senate, and the Senate Minority Leader "or legislators who are appointed to represent them. . . ."[2]
The general rule is that official duties of a ministerial character can be delegated to another but those requiring the exercise of judgment and discretion cannot, absent specific statutory authority.[3] In Moore v.Wilson,[4] a farmer sued the Livestock Commissioner because the Commissioner's deputy had posted a notice quarantining the farmer's cattle. The farmer argued that only the Commissioner had the authority to order the quarantine.
The Court recited the general rule and noted that while the statutes authorized the Commissioner to appoint clerks, inspectors, and stenographers, no statute empowered him to appoint deputies. Consequently, the deputy had no authority to act in the Commissioner's stead:
 "At common law, officers could appoint deputies for the discharge of mere ministerial duties but they had no authority to entrust to deputies the performance of duties of a judicial nature or those involving judgment and discretion. [T]he argument that it is impracticable for a commissioner to give personal attention to every case cannot control."[5]
Prior Attorney General opinions have considered the issue of delegation of voting authority by board members of a public corporation similar to Kansas, Inc.[6] In Attorney General Opinions No. 2002-46 and 2002-52, Attorney General Carla Stovall considered the Information Network of Kansas (INK), the board of directors of which includes the Secretaries of State, Transportation, and Revenue as well as individuals appointed by the Governor. General Stovall concluded that these cabinet secretaries could delegate to a subordinate their authority to discuss and vote on matters before the INK board because Kansas law generally authorizes those cabinet secretaries to appoint individuals in their employ to act on the secretaries' behalf, subject to limitations imposed by the respective secretary. However, regarding the Governor's appointees to the INK board, General Stovall determined that they had no similar authority and, therefore, could not appoint representatives to vote in their absence.
As the duties of Kansas, Inc. board members involve the exercise of discretion, it is our opinion that, absent statutory authority, a board member cannot delegate to a subordinate the member's authority to vote on matters that come before the board. As the Kansas, Inc. statutes[7] do not address the delegation issue, we review other statutes that may be relevant.
1. The Governor and the Secretary of Commerce. Because the office of governor did not exist at common law, a governor's powers are limited by the state constitution and the statutes.[8] In Attorney General Opinion No. 78-104, Attorney General Curt Schneider concluded that "there is no inherent power in the office of governor other than that expressly granted by the constitution or statutes of the state or that which is expressly or reasonably to be implied therefrom."
Article 1, § 3 of the Kansas Constitution provides that "the supreme executive power of [the] state is vested in a governor, who [is] responsible for the enforcement of the laws of [the] state." Our research has detected no Kansas appellate court decisions construing the Governor's constitutional executive powers to allow the Governor to delegate her discretionary authority to a subordinate. While the Governor can appoint private secretaries and other employees "as necessary,"[9]
there is no statutory authority for such employees to act for or on the Governor's behalf in discretionary matters.[10] Moreover, while the Lieutenant Governor is constitutionally authorized to "assist the Governor,"[11] and assume the Governor's duties "in the event of the disability of the governor,"[12] these constitutional powers are not sufficient to allow the Lieutenant Governor to vote on the Governor's behalf at Kansas, Inc. meetings.[13]
In short, in the absence of an appellate court decision interpreting the Governor's constitutional executive powers to allow the Governor to delegate her discretionary authority to a subordinate, it is our opinion that the rule stated in Moore v. Wilson[14] precludes the Governor from delegating to a subordinate the authority to vote on matters that come before the board. This conclusion, however, does not preclude a representative of the Governor's office from attending board meetings and sharing the Governor's views with board members. It merely precludes him or her from voting or taking any other official board action.
The Legislature could also authorize a designee of the Governor to sit on the Kansas, Inc. board as has been done with other boards and commissions where the Governor is statutorily authorized to sit as a member or appoint a designee.[15]
Unlike the Governor, the Secretary of Commerce can employ individuals who "shall perform such duties . . . as the secretary . . . may prescribe, and such person shall act for, and exercise the powers of thesecretary . . . to the extent authority to do so is delegated by the secretary . . . to them [sic]."[16] Similar verbiage regarding the delegation authority of the Secretaries of Transportation and Revenue was determined to be sufficient in Attorney General Opinion No. 2002-52 to allow both Secretaries to delegate to employees the authority to discuss and vote on their behalf at meetings of the INK board. Thus, it is our opinion that while the Governor is not authorized to delegate her authority to vote on matters considered by the Kansas, Inc. board of directors, the Secretary of Commerce may delegate authority to an individual in his employ to vote on any matter that may be considered by the board to the extent authorized by the Secretary.
2. Appointees of the Governor and the Board of Regents. K.S.A. 2004 Supp. 74-8001(a)(3) authorizes the Governor to appoint nine individuals from various economic sectors who have demonstrated "outstanding knowledge and leadership" in their respective areas. Such individuals must then be confirmed by the Senate.
Our research has detected no statutory authority for such gubernatorial appointees to — themselves — designate others to serve in their absence.[17] The same is true for the appointment by the State Board of Regents (Regents). Therefore, in the absence of statutory authority, neither the Regents' appointee nor the gubernatorial appointees can appoint others to vote, in their absence, on matters considered by the Kansas, Inc. board.
3. The Commanding General of the Kansas Cavalry. The Kansas Cavalry is a private corporation organized to "foster and safeguard the economic growth of the State of Kansas."[18] Members of the board of directors include state officials and private citizens. While the bylaws allow the deputy commanding general to "perform all duties of the commanding general during absence or incompetence of the commanding general,"[19]
a bylaw applies only to the internal government of a corporation and cannot conflict with state law.[20] Thus, this bylaw is insufficient to supplant the requirement of statutory authority for delegating voting rights to a subordinate. Therefore, the commanding general cannot appoint a representative to vote on matters at Kansas, Inc. meetings.
4. Speaker of the House, the House Minority Leader, the Presidentof the Senate, and the Senate Minority Leader
K.S.A. 2004 Supp. 74-8001(a)(6) provides for membership on the Kansas, Inc. board for "the speaker of the house, the house minority leader, the president of the senate, and the senate minority leader or legislators whoare appointed to represent them and who will provide continuity by virtue of their membership on the standing committee on commerce of the senate, the standing committee on economic development of the house of representatives or the joint committee on economic development."[21]
Clearly, this statute authorizes either the designated officeholders or their representatives to participate and vote as board members.
Proxy voting. You inquire whether an absent board member may designate another board member as a proxy who would then be entitled to vote or take official board action on behalf of the absent member as directed by the absent board member.
A proxy is a person who is deputed by another to represent him or her.[22] Generally, a proxy's authority is limited to that given to the proxy by the principal.[23] As indicated previously, while the Secretary of Commerce may authorize an individual in the Secretary's employ to exercise the Secretary's voting authority on the board, neither the Governor or the other board members enjoy this prerogative.[24]
While proxy voting is allowed for stockholders in corporations organized under the Kansas Corporation Code,[25] Kansas, Inc. is not a private corporation and, therefore, cannot avail itself of the Code's provisions.[26] Based upon the rationale in Moore v. Wilson, it is our opinion that, absent statutory authorization, a board member cannot give his or her proxy to another board member.
Quorum requirement. You also inquire whether state law permits a majority of members present at a meeting to constitute a quorum. A quorum is simply the minimum number of members who must be legally present to transact business.[27] While some statutes address quorum requirements for boards and commissions,[28] no statute prescribes a quorum requirement for Kansas, Inc. Therefore, in the absence of a statute designating the number necessary for a quorum, the common law dictates that a majority of the entire governing body is the minimum number necessary to transact business.[29] Thus, as the governing body consists of seventeen members, a quorum is nine members.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Mary Feighny Assistant Attorney General
PK:JLM:MF:jm
[1] K.S.A. 2004 Supp. 74-8001; 74-8002; 74-8004.
[2] K.S.A. 2004 Supp. 74-8001.
[3] Moore v. Wilson, 84 Kan. 745, 747 (1911).
[4] Id.
[5] 84 Kan. at 747 and 750.
[6] Attorney General Opinions No. 2002-46 and 2002-52.
[7] K.S.A. 74-8001 et seq.
[8] State ex rel. Bennett v. Bonner, 214 P.2d 747, 752 (Mont. 1950);Taylor v. Beckham, 56 S.W. 177 (Ky 1900); Baxter v. Brooks, 1874 WL 1156 (Ark 1874); 38 Am.Jur.2d Governor §§ 1, 4 ("A constitutional grant of the supreme executive power to a governor implies such power as will secure an efficient execution of the laws, which is the peculiar province of that department, to be accomplished, however, in the manner, by the methods, and within the limitations prescribed by the constitution and statutes of the state.")
[9] K.S.A. 75-3102.
[10] Ministerial duties may be delegated. See K.S.A. 2004 Supp. 75-106
(proclamations, warrants, and requisitions that are required by law to be issued by the Governor can be signed by the Lieutenant Governor, or in their absence, by persons designated by the Governor).
[11] Kan. Const., Art. 1, § 12.
[12] Kan. Const., Art. 1, § 11. "Disability" does not include the Governor's absence from the state. Markham v. Cornell, 136 Kan. 884
(1933).
[13] See K.S.A. 75-301 (Lieutenant Governor "shall perform such duties as are prescribed by the constitution, and such as may be required of him or her by law.")
[14] Note 3.
[15] K.S.A. 2004 Supp. 22-4111 (Kansas Council for Interstate Adult Offender Supervision); 46-2303 (Joint Committee on State-Tribal Relations); K.S.A. 65-5703 (State Emergency Response Commission); 72-60b01
(Midwestern Higher Education Commission); 74-9501(Kansas Criminal Justice Coordinating Council); 75-2719a (State Historic Sites Board of Review)
[16] K.S.A. 2004 Supp. 74-5002o (emphasis added).
[17] See Attorney General Opinion No. 2002-46 (Governor's appointees to INK board cannot appoint representatives to serve in their absence).
[18] Kansas Cavalry, Inc. bylaws.
[19] Id. at Art. VI, § 3(B).
[20] Black's Law Dictionary 182 (1979); K.S.A. 17-6009(b).
[21] Emphasis added.
[22] Black's Law Dictionary 1103 (1979); Attorney General Opinion No. 89-3.
[23] 13 Am.Jur.2d Corporations § 914.
[24] The legislators designated by the Senate and House leaders vote as board members, not proxies.
[25] K.S.A. 17-6001 et seq.; K.S.A. 2004 Supp. 17-6502.
[26] See Attorney General Opinion No. 2002-46 (INK is a public corporation and, therefore, not subject to the same rules as a private corporation).
[27] Black's Law Dictionary 1284 (2004). Attorney General Opinion No.96-32.
[28] K.S.A. 2004 Supp. 1-202 (Kansas Board of Accountancy); 12-4001
(Kansas Advisory Council on Intergovernmental Relations); K.S.A. 17-2232
(Credit Union Council); K.S.A. 2004 Supp. 20-3004 (Supreme Court Nominating Commission).
[29] Attorney General Opinions No. 2002-41, 96-21 and 91-73; 62 C.J.S.Municipal Corporations § 231; Black's Law Dictionary 1284 (2004).