John S. Robb, Attorney for U.S.D. 373 Robert Myers, City Attorney for the City of Newton Randall J. Pankratz, Attorney for Newton Recreation Commission 110 East Broadway P.O. Box 544 Newton, Kansas 67114-0544
Dear Messers. Robb, Myers, and Pankratz:
As attorneys for Unified School District 373, Harvey County (Newton) (USD 373), City of Newton (City) and the Newton Recreation Commission (Recreation Commission) respectively, you pose four questions involving two alternative scenarios in which the YMCA would furnish all or a significant portion of the recreational programming in Newton. The first alternative is where the Recreation Commission, City and USD 373 would contract through an interlocal agreement for all recreation programming with the YMCA, a non-governmental entity. In the second alternative, only the City would sign an interlocal agreement with the YMCA for recreational programming.
Your letter states that the improvement or replacement of the current recreational facility and expansion of programming opportunities for the community has stimulated discussion about the advantages and disadvantages of inviting the YMCA to become a partner for both a new facility and all or part of recreation offerings. At issue is the role of the Recreation Commission, either as a participant in a new interlocal agreement with the YMCA, or in the alternative, a non-participant should the City desire to enter into an interlocal agreement with the YMCA independently.
The relevant facts are as follows: the Recreation Commission was created by the City and USD 373 as a joint recreation commission as authorized in K.S.A. 12-1922 et seq. The City constructed and owns the current recreation facility as well as other outdoor recreation sites such as a swimming pool and ball fields used for organized sports. All of the facilities are operated by the Recreation Commission. USD 373 also provides some facilities for use by the Recreation Commission. The Recreation Commission does not own any of the current facilities. The Recreation Commission's annual budget is approximately $1 million with $171,000 applied toward the debt service for the existing facility.[1]
You ask the following questions:
 "1. Would the Newton Recreation Commission exceed or contravene its statutory powers by entering into an interlocal agreement with the City, the School District and the YMCA, under which the YMCA would provide designated recreation services or programming for the community? If the agreement called for all or almost all of the Rec Commission's tax levy budget to be paid to YMCA for recreation services, would the result be the same?"
 "2. If such an agreement would be allowable, what level of control or authority over that provided service or programming needs to be retained by the Rec Commission to ensure that the Rec Commission retains the level of accountability and control required by K.S.A. 12-1922 et seq., and envisioned by your office's 2001 and 2005 letters to Abilene and Coffeyville officials? What operational safeguards would be required or recommended by your office to ensure that accountability actually exists in day-to-day practice?"
These two questions are analyzed together as they center upon the limitations, if any, the Recreation Commission has to contract with a non-governmental entity for the provision of recreational services. A recreation commission is granted the express authority to "enter contracts."[2] The contract may either be a straightforward contract for services, or may be an interlocal agreement. The Interlocal Cooperation Act (Act) permits agreements that are a form of contract available to defined public agencies to "make the most efficient use of their powers by enabling them to cooperate with other localities, persons, associations and corporations on a basis of mutual advantage. . . ."[3] For historical perspective only, the legislation authorizing the establishment, consolidation and dissolution of a joint recreation commission predates the Interlocal Cooperation Act, city home rule, and limited home rule for school districts.[4] Express legislative permission was required for cooperative ventures until the passage of the Act.[5]
Recreation commissions may be created by a city, school district or both.[6] "A recreation commission is a creature of statute and has only such powers as are conferred upon it by statute, expressly or by clear implication, and any reasonable doubt as to the existence of such power should be resolved against its existence."[7] The statute listing the powers of a recreation commission states every recreation commission shall have the power to "make and adopt rules and regulations for the operation of the recreation system"[8] and "enter [into] contracts."[9]
There is no additional language to provide guidance to what extent a recreation commission may contract for the operation of the recreation system with a private non-governmental agency. Therefore, it is well within the Recreation Commission's statutory authority to contract with any service provider for specific recreation programs. For example, the Recreation Commission may contract for dance instruction, swimming lessons or any other recreational offering that the commission believes private specialized knowledge or expertise may be appropriate.
Should the Recreation Commission, City, USD 373, and the YMCA agree to allow the latter to provide recreational services within the provisions of the Act, the appropriate section of the Act states a "public agency may enter into agreements with one or more public or private agencies for joint or cooperative action pursuant to the provisions of this act."[10] A recreation commission is the formal outgrowth of the desire of a city or school district to provide recreation services and is considered a municipality as defined in the Act.[11] Past Attorney General opinions have concluded that each public agency must have the statutory authority to provide the type of service or program offered.[12] As noted above, cities and school districts may offer recreation programs independently or cooperatively.[13] The Act does not grant or confer additional or new powers.[14] Based upon the inclusion of "park and recreational services" as an allowable subject for an interlocal cooperation agreement, the three public agencies and the YMCA would be permitted to enter into such an agreement.[15] As such, the answer to the first part of your first question is that the recreation commission can enter into an interlocal agreement for recreational services with the City, USD 373 and the YMCA. While there is no requirement that a participating agency have a vote on a jointly-created board, should one be established, it is important to note that the signatories to an interlocal cooperation agreement must have some specific duties or responsibilities within the agreement.[16]
The answer to the second part of your first question as to whether committing nearly all of the Recreation Commission's tax levy to a contract or interlocal agreement is found in the statutes. The Recreation Commission is granted broad powers for the operation of the recreation system.[17] Absent a statutory limitation on a recreation commission's spending authority, a recreation commission may exercise its discretion expending public funds for public purposes.[18]
The first portion of your second question is to what extent the Recreation Commission must retain oversight or control of the contractual recreational services or programming. Without a specific proposed agreement to review, it is difficult to provide more than general guidelines. The legislature has delegated to a recreation commission the operation of the recreation system "and all programs and services thereof."[19] The specific powers of a recreation commission are listed in K.S.A. 2007 Supp. 12-1928. When considering the appropriate level of delegation a recreation commission may provide to a third party, the general rule is that official duties of a ministerial character can be delegated to another but those requiring the exercise of judgment and discretion cannot, absent statutory authority.[20]
In Moore v. Wilson, [21] the court expressed the rationale for the general rule when it stated:
 "At common law officers could appoint deputies for the discharge of mere ministerial duties; but they had no authority to intrust to deputies the performance of duties of a judicial nature, or those involving judgment and discretion. In a general way, it may be said that the presumption of the law is that an office is held and executed by the one chosen for it, and especially where it is necessary that the officer shall possess particular qualification. In Mechem on Public Officers, § 567, it is said: `In those cases in which the proper execution of the office requires, on the part of the officer, the exercise of judgment and discretion, the presumption is that he was chosen because he was deemed fit and competent to exercise that judgment and discretion, and, unless power to substitute another in his place has been given to him, he cannot delegate his duties to another."[22]
If Moore precludes a public official from entrusting the official's employees with duties involving judgment and discretion, the same principle would apply to an independent contractor such as the YMCA.
Presumably, members of the Recreation Commission were selected because they were deemed competent to make decisions involving the operation of a recreation system. Based upon the court's reasoning in Moore the Recreation Commission may not delegate to the YMCA sole decision-making authority regarding program offerings, fees, rules governing the conduct of participants, eligibility for participation in programs, and expenditure of public funds. The YMCA may make recommendations to the Recreation Commission but the latter must retain the power to approve or reject the recommendations.[23]
Should an interlocal cooperation agreement be contemplated, in addition to the statutory requirements for such an agreement, [24] the provisions should be clear that the Recreation Commission retains ultimate authority for approving the subjects previously mentioned herein.
You reference two letters from this office that address the question of the ability of a statutorily created recreation commission to contract with a municipality for virtually all operational and fiscal decisions.[25] In both circumstances, an intergovernmental agreement was proposed that provided the city nearly complete authority to operate the recreation system and the existing recreation commission was reduced to an advisory role only. Because the relevant statutes provide a method for a city within an existing recreation district to assume responsibility for the recreation system, and the proposed agreements circumvented that statutory process, the interlocal agreements were determined to be contrary to the statutes.[26] The facts in those two cases are very different than what is proposed here. Although yielding a similar result as Moore, the letters do not provide any relevant legal principles for this discussion.
"3. If the YMCA was invited to build a facility and carry out all or substantially all of our community's recreation program under the direct operational control of the YMCA, would such an arrangement be consistent with the continued existence of a public recreation commission operating under K.S.A. 12-1922 et seq.?"
There is no prohibition against the YMCA building a facility and offering recreation programs within Newton. It is unclear who is issuing such an invitation and if public funds are proposed to be contributed by USD 373, the City or the Recreation Commission to support the construction of a new facility and operation of the YMCA. Thus, we are unable to answer the question. However, the answer to your next question may address the use of public funds for recreational services.
"4. K.S.A. 12-1924 provides that "The programs and services within a joint recreation system shall not be conducted by both the city and school district, each acting independently of the other. Whenever a recreation system is established, any city or school district operating or participating in the operation of a recreation system shall cooperate in providing property and facilities belonging to each entity for recreational purposes." To what extent would these provisions of K.S.A.12-1924 restrict the ability of the City to enter into an Interlocal agreement with the YMCA alone and without the School District and Rec Commission?"
The first sentence of the language you have quoted makes it clear that once a recreation commission is established, either by a city, school district or jointly, the recreation commission has the exclusive authority to operate the recreation system for the area encompassing the district.[27] Although there are some circumstances where a city may continue its recreation activities when a recreation commission is formed, if the city is a participant in the formation, that city is prohibited from competing with the recreation commission.[28] Because the language of the statute is clear we need look no further for legislative intent or history.[29]
The joint recreation commission statute provides a method for a city to withdraw from the cooperative agreement.[30] There is no other method provided in the statutes and as such the City would not be permitted to accomplish by interlocal agreement with the YMCA what is prohibited by statute. Therefore, the answer to your final question is that while the current Recreation Commission is charged with providing recreational programming, the City may not enter into a separate agreement with the YMCA for competing recreation services.
In summary, a recreation commission jointly created by a city and school district has the statutorily granted contract authority to enter into an interlocal agreement with a private organization for the provision of recreational programming with or without the city or school district's participation. The recreation commission must maintain a degree of oversight that reserves ultimate authority for programming, and other operational decisions in order to provide accountability. A city participating in a joint recreation commission may not enter into any interlocal agreement for the provision of recreational services with either a public or private entity.
Sincerely,
 Steve Six Attorney General
 Michael J. Smith Assistant Attorney General
SNS:MF:MJS:jm
[1] The 2007 mill levy for the Newton Recreation District was 5.653 for general purposes and 1.204 for employee benefits.
[2] K.S.A. 2007 Supp. 12-1928(g).
[3] K.S.A. 12-2901.
[4] Joint recreation commissions were originally authorized by L. 1945, ch. 108 and codified as K.S.A. 12-1901 et seq. (now repealed). The Interlocal Cooperation Act was enacted by L. 1957, ch. 100 and codified as K.S.A. 12-2901 et seq. Constitutional Home Rule for municipalities was passed by the voters in November, 1960 and is located in the Kansas Constitution, Art. 12, § 5. Limited Home Rule for school districts was enacted as L. 2003, ch. 158, § 11 and is codified at K.S.A. 2007 Supp.72-8205.
[5] The Kansas Constitution, Art. 2, § 21 was amended in 1974 to provide the legislature broad authority to delegate local legislative and administrative powers to political subdivisions. The Kansas Constitution, Art. 6, § 5 was amended in 1966 permitting school boards to enter into cooperative agreements for education under the supervision of the state board of education.
[6] K.S.A. 12-1924.
[7] Attorney General Opinion No. 94-48 citing Attorney General Opinion No. 88-157 and Hobart v. U.S.D. No. 309, 230 Kan. 375, 383 (1981).
[8] K.S.A. 2007 Supp. 12-1928(a)
[9] K.S.A. 2007 Supp. 12-1928(g).
[10] K.S.A. 2007 Supp. 12-2904(b).
[11] K.S.A. 2007 Supp. 12-2903(a)(3) and Flannigan v. LeavenworthRecreation Commission, 219 710, 716 (1976).
[12] See Attorney General Opinions No. 81-233 (although participating agencies have the authority to establish a building fund, different investment restrictions prevent the establishment of a joint fund); 87-85 (a watershed district may not use its funds for the maintenance of a township road); and 2006-9 (municipalities may not enter into interstate insurance pools absent specific statutory authority).
[13] K.S.A. 12-1922 et seq.
[14] Attorney General Opinion No. 95-38 citing Attorney General Opinions No. 81-233 and 87-85.
[15] K.S.A. 2007 Supp. 12-2904(a).
[16] Attorney General Opinion No. 97-80 (there is no requirement for the separate entity created by an interlocal agreement to have equal representation or voting by participating members).
[17] K.S.A. 2007 Supp. 12-1928.
[18] See, State ex rel. Tomasic v. Unified Government of WyandotteCounty/ Kansas City, Kansas, 265 Kan. 779, 788 (1998) for a discussion of the "public purpose doctrine."
[19] K.S.A. 12-1924.
[20] Moore v. Wilson, 84 Kan. 745, 747 (1911) (deputy livestock commissioner had no authority to quarantine livestock; statutory authority accorded only to the livestock commissioner). See also
Attorney General Opinion No. 2007-17 (board of technical college may not delegate real property acquisition decisions and employment matters to board staff; delegation appropriate only for ministerial and administrative functions); Attorney General Opinion No. 2005-05 (governor cannot delegate voting authority to subordinate); Attorney General Opinion No. 80-219 (Behavioral Sciences Regulatory Board cannot delegate to board committee determination of examination for licensure applicants; committee can make recommendations to board).
[21] Id.
[22] Id. at 747-748.
[23] See Attorney General Opinion No. 80-219 (Behavioral Sciences Regulatory Board cannot delegate to board committee determination of examination for licensure applicants; committee can make recommendations to board).
[24] K.S.A. 2007 Supp. 12-2904(d).
[25] Letter from Mary Feighny, Assistant Attorney General, to Paul Kritz, City Attorney for Coffeyville, Kansas (February 6, 2001) and letter from Mary Feighny, Assistant Attorney General, to Mark A. Guilfoyle, City Attorney for Abilene, Kansas (November 1, 2005) (on file with this office).
[26] K.S.A. 12-1929(b).
[27] K.S.A. 2007 Supp. 12-1922(d) defines the taxing district as the largest area of the participating members.
[28] See Attorney General Opinion No. 92-69 (second city becomes part of the taxing district of a recreation commission; may not participate in its formation). See also Attorney General Opinion No. 2000-4 that discusses the prohibition of two or more cities forming a recreation commission with a school district under K.S.A. 12-1922 et seq.
[29] Griffin v. Suzuki Motor Corp., 280 Kan. 447, 460 (2005).
[30] K.S.A. 12-1933.